CHRISTOPHER D. SULLIVAN (148083)
STACEY L. PRATT (124892)
ROXANNE BAHADURJI (290117)
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200
Fax:     (415) 263-9200
Email: csullivan@diamondmccarthy.com
         stacey.pratt@diamondmccarthy.com
         rbahadurji@diamondmccarthy.com

Special Litigation Counsel
for Debtor and Plaintiff
E. Lynn Schoenmann

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>E. LYNN SCHOENMANN<br><br><br>E. LYNN SCHOENMANN,<br><br>          Plaintiff,<br><br>v.<br><br>STUART GORDON SCHOENMANN;<br>CELESTE LYTLE; BETH SCHOENMANN;<br>COLETTE SIMS; AND ALL PERSONS<br>UNKNOWN, CLAIMING ANY LEGAL OR<br>EQUITABLE RIGHT, TITLE, ESTATE, LIEN,<br>OR INTEREST IN THE PROPERTY<br>DESCRIBED IN THE COMPLAINT<br>ADVERSE TO PLAINTIFF'S TITLE, OR<br>ANY CLOUD UPON PLAINTIFF'S TITLE,<br><br>          Defendants. | Bankr. Case No: 22-30028 – DM<br><br>Chapter 11<br><br><br>**VERIFIED COMPLAINT FOR**<br><br>**(1) QUIET TITLE; AND**<br><br>**(2) DECLARATORY RELIEF** |

VERIFIED COMPLAINT FOR QUIET TITLE AND DECLARATORY RELIEF

Plaintiff E. Lynn Schoenmann, in her capacity as the debtor in Bankruptcy Case No: 22-30028 ("Plaintiff" or "Lynn"), complains against Stuart Schoenmann, Celeste Lytle, Beth Schoenmann, Collette Sims (the "Named Defendants"), all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon Plaintiff's title (collectively "Defendants") as follows:

## INTRODUCTION

1.     This action seeks a judgment quieting title to certain real properties.  Plaintiff alleges, and will prove, that the real properties became 100% owned by Lynn as her separate property upon the death of the decedent Donn Schoenmann ("Donn").  As things currently stand, those properties are therefore property of the estate.

2.     During the course of their more than twenty-five years of marriage, Lynn and Donn purchased the Subject Properties (defined below) and held them, most of the time and in most cases, as community property with right of survivorship or the functional equivalent.

3.     Donn passed away on March 22, 2018.  At the time of Donn's death, each of the last recorded deeds unequivocally provided that title to the Subject Properties was held as community property with the right of survivorship.  As a matter of law, upon Donn's death, the Subject Properties thus passed outside of probate to Lynn as her separate property.  Established California law provides that "the owner of the legal title to the property is presumed to be the owner of full beneficial title.  This presumption may be rebutted only by clear and convincing proof."  Cal. Evidence Code section 662.  Title reports for the 39 Ethel Avenue and the Idyllwild properties also reflect the proper state of the current ownership. Lynn is the 100% owner of the Subject Properties, and the Subject Properties are property of the estate.

4.     The Named Defendants will contest this result.  The Named Defendants contend that Donn's "Probate Estate is presently entitled to no less than one-half of the community property of" the Subject Properties.  (E.g., Exhibit A to Claim 20-1, pg. 4 of 6 [claim of Beth Schoenmann].)

5.     The Named Defendants also have claimed that the purchase of the Subject Properties can be traced to the use of Donn's separate property before the marriage and thus property of Donn's estate. Under this theory, the Subject Properties would not be property of the bankruptcy estate at all.  In their proof of claims, however, the Named Defendants appear to have dropped that claim.  (See id.)

6.      Determining what is property of the estate is a core function of the bankruptcy court over which the bankruptcy court has exclusive jurisdiction. For the purposes of prosecuting this bankruptcy case, and this adversary action, Lynn accepts the determination in the Tentative Decision in the action entitled *In Re The Estate of Donn R. Schonemann*, Marin County Superior Court No. PR01801087, that a Post-Marital Agreement entered into between Lynn and Donn is invalid. As described further below, the probate court made **no** ruling on the ownership interests of the Subject Properties. Thus, the issues are ones for this Court to determine.

## THE PARTIES

7.      On January 14, 2022, Lynn filed for Chapter 11 of Title 11 of the United States Code before this Court. Lynn serves as a Chapter 7 Panel Trustee for the Northern District of California, and resides in Mill Valley, California. Prior to his death, Lynn was married to Donn.

8.      Defendant Stuart Schoenmann ("Stuart") is one of Donn's children from his first marriage, and a beneficiary of Donn's estate. Stuart is also the executor of Donn's estate. Stuart resides in Albuquerque, New Mexico. Stuart has filed a proof of claim in Lynn's bankruptcy.

9.      Defendant Celeste Lytle ("Celeste") is one of Donn's children from his first marriage, and a beneficiary of Donn's estate. She resides in Glendale, California. Celeste has filed a proof of claim in Lynn's bankruptcy.

10.      Defendant Beth Schoenmann ("Beth") is one of Donn's children from his first marriage, and a beneficiary of Donn's estate. She resides in Los Angeles, California. Beth has filed a proof of claim in Lynn's bankruptcy.

11.      Defendant Collette Sims ("Collette") is Donn's granddaughter from his first marriage, and a beneficiary of Donn's estate. She resides in Valley Village, California. Collette has filed a proof of claim in Lynn's bankruptcy.

12.      The Defendants Named herein as "All Persons Unknown, Claiming Any Legal Or Equitable Right, Legal Title, Estate, Lien, Or Interest in the Property Described In The Complaint Adverse to Plaintiff's Title, Or Any Cloud on Plaintiff's Title Thereto" (the "Unknown Defendants" (collectively with the Named Defendants, the "Defendants") are unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that the Unknown Defendants, and each of them, claim some right,

2

COMPLAINT

title, estate lien, or interest in the real property and real property interests that are adverse to Plaintiff's property interests at issue in this adversary action.

13. Importantly, Lynn and Donn's two children, Anna and Jason, are also beneficiaries of Donn's estate (holding 40% of the beneficial interests). While not parties, Anna and Jason have a vested interest in the outcome of this adversary action and in obtaining as fast, efficient, and inexpensive determination of the disputed issues as possible.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e). This is a core proceeding under 28 U.S.C. § 157(b)(2).

15. Venue properly lies in this judicial district under 28 U.S.C. § 1409(a).

16. Lynn consents to entry of a final judgment by the Bankruptcy Court pursuant to the Federal Rules of Bankruptcy Procedure 7008.

## REAL PROPERTIES

17. The primary subjects of this action are the following residential real properties:

A. The real property located within the City of Idyllwild, County of Riverside, State of California, commonly known as 25380 Green Oaks Drive, Idyllwild, CA 92549, Assessor's Parcel Number: 563-073-005 ("Idyllwild Home"), and legally described as follows:

> Lot 21 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 and 88, inclusive of maps, Riverside County Records, together with that portion of Lott 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of maps, Riverside County Records, and more commonly known as 25380 Green Oaks Court, Idyllwild, VA [CA] 92549.

B. The real property located in the unincorporated area of Riverside County, State of California described as Lot 20 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 through 88, inclusive of maps, Riverside County of Records, Assessor's Parcel Number: 563-073-003 ("Idyllwild Lot"), and legally described as follows:

> LOT 20 OF TRACT NO. 2790, AS SHOWN BY MAP ON FILE IN BOOK 54, PAGES 86 THROUGH 88 INCLUSIVE OF MAPS, RIVERSIDE COUNTY RECORDS.

C.  The real property located within City of Mill Valley, County of Marin, State of California, commonly known as 39 Ethel Avenue, Mill Valley, California 94941, Assessor's Parcel Number: 028-101-08 ("39 Ethel Avenue"), and legally described as follows:

> BEGINNING AT A POINT IN THE NORTH LINE OF ETHEL AVENUE, WHICH POINT IS THE COMMON CORNER OF LOTS NO. 1. AND 2 OF BLOCK NO. 14 OF THE MAP HEREINAFTER REFERRED TO AND RUNNING THENCE NORTH 11 DEGREE 11' EAST 163.02 FEET; THENCE NORTH 76 DEGREE 30' EAST 43.80 FEET; THENCE SOUTH 23 DEGREE 43' EAST 108.35 FEET; THENCE SOUTH 54 DEGREE 31' WEST 21.30 FEET; THENCE SOUTH 34 DEGREE 36' WEST 39.71 FEET; THENCE SOUTH 57 DEGREE 30' WEST 79.14 FEET; THENCE SOUTH 32 DEGREE 47' WEST 20 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.
> BEING A PORTION OF LOTS NO. 1 AND 2, IN BLOCK 14, AS THE SAME ARE LAID DOWN AND DELINEATED AND AS DESIGNATED UPON THAT CERTAIN MAP ENTITLED,"TAMALPAIS LAND AND WATER COMPANY, MAP NO. 5", WHICH MAP IS ON FILE AND ON RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MARIN, STATE OF CALIFORNIA, TO WHICH MAP REFERENCE IS HEREBY MADE FOR A FURTHER OR MORE PARTICULAR DESCRIPTION OF SAID LAND.

D.  The real property located within the County of Maricopa, State of Arizona, commonly known as 4200 N. Miller Road, Unity 117, Scottsdale, Arizona, 85251 ("Scottsdale Condo"), and legally described as follows:

> LOT 117, of the HERITAGE SCOTTSDALE, ACCORDING TO DECLARATION OF HORIZONTAL PROPERTY REGIME RECORDED IN DOCUMENT NO. 90-0261768, DOCUMENT NO. 91-0578637, DOCUMENT NO 91-0578638, DOCUMENT NO. 92-0144638, DOCUMENT NO. 92-0144640, DOCUMENT NO. 92-0277321, DOCUMENT NO. 92-0277322, DOCUMENT NO. 93-0024944, DOCUMENT NO. 93-0949545, AND PLAT RECORDED IN BOOK 291 OF MAPS, PAGE 35, RECORDS OF MARIPOCA COUNTY, ARIZONA.
> TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS AS SET FORTH IN SAID DECLARATION AND PLAT.
> COMMONLY KNOWN AS 4200 N. Miller Road, Unity 117, Scottsdale, AZ 85251.

18.  The above listed properties are collectively referred to here as the "Subject Properties."

19.  At the time of Donn's death, the deeds for each of the Subject Properties stated that the property was held as follows: "Donn R. Schoenmann and E. Lynn Schoenmann, community property with rights of survivorship." Attached hereto as Exhibits A through D are true and correct copies of those deeds

to the Subject Properties. Title reports for the 39 Ethel Avenue and the Idyllwild properties show that the property, following Donn's death, is held as follows: "E. Lynn Schoenmann, an unmarried woman." Attached as Exhibits E and F are true and correct copies of those title reports.

20.     By operation of law, upon Donn's death, 39 Ethel Avenue, the Scottsdale Condo, and the Idyllwild Home and Lot passed outside of probate to Lynn as her separate property.

## GENERAL ALLEGATIONS

### Probate Proceedings

21.     Shortly after Donn's death on March 22, 2018, Stuart was appointed executor under Donn's will. The probate proceedings began on April 2, 2018 (*In Re The Estate of Donn R. Schoenmann*, Marin County Superior Court No. PR01801087).

22.     In those probate proceedings, Lynn incurred more than $1 million defending the probate litigation. Stuart and the Named Defendants claim they are entitled to more than $2,450,000 in legal fees that they have incurred. The probate litigation is far from a conclusion.

23.     The parties attempted to mediate their disputes years into the litigation. While an overall settlement could not be reached, given the overriding significance of the Post Marital Agreement that, if enforceable, essentially would have resolved most of the issues in Lynn's favor, the Parties agreed to litigate the probate proceedings in distinct phases.

24.     To that end, on October 30, 2020, probate court petitioners Stuart, Celeste, Beth, and Collette on the one hand, and Lynn on the other hand, entered into the Stipulation of Counsel for Bifurcation of Issues for Trial in the California probate court ("Stipulation"). The parties, stipulated to bifurcate the trial to litigate as a threshold issue, prior to trial of any other issue, the question of "[w]hether the Post Marital Agreement dated November 9, 2016, is a binding, enforceable agreement under the Family Code and other provisions of law, as more particularly addressed in *In re Marriage of Burkle* (2006) 139 Cal. App. 4th 712 and other related cases." Attached hereto as Exhibit G is a true and correct copy of the Stipulation. Per the Stipulation, the trial was limited to the sole question of the validity of the Post Marital Agreement ("PMA"). No other matter or issue was to be adjudicated.

25.     Lynn's litigation team in the probate court stuck to the rules on the limited scope of the bifurcated trial. To the extent that the probate court commented on other issues, Lynn was denied a chance

COMPLAINT

to present a full evidentiary record.

26. Pursuant to the Stipulation, an evidentiary hearing was held in the probate court and the matter was taken under submission on November 24, 2021.

27. On December 27, 2021, the probate court entered a Tentative Decision and Proposed Statement of Decision ("Tentative Decision") under California Rule of Court 3.1590. The probate court found that the PMA signed by Donn and Lynn Schoenmann on November 8, 2016 was the product of undue influence and as a result is invalid.

28. On that same day, the Court entered its Proposed Judgment. Though procedurally improper, the probate court also signed the "Proposed Judgment." A true and correct copy of the Proposed Judgment is attached as Exhibit H.

29. The Tentative Decision was limited in scope. The Proposed Judgment is also extremely narrow: "The post marital agreement signed by Donn and Lynn Schoenmann on November 8, 2016 was the result of undue influence and is hereby set aside as void."

30. The PMA was a post marital agreement. Determining that the PMA was invalid did not invalidate or change the existing, recorded deeds. The Tentative Decision did not make any determination regarding the validity of any deeds. The Tentative Decision did not decide who, at the time of Donn's death, held title to the Subject Properties or whether Donn's estate held any interest in the Subject Properties. The Tentative Decision did not include any ruling on the allocation of the Subject Properties between Lynn and Donn's estate.

**Early Years**

31. Donn and Lynn met in 1984 in Los Angeles. Donn was working for Merrill Lynch in Los Angeles in institutional sales. Lynn was working as an in-house attorney for First Interstate Bank in their Los Angeles headquarters.

32. After Donn's divorce to his first wife, which dragged on for many years, was finalized, Donn and Lynn were married on May 1, 1993

33. By late 1993, Donn was no longer in good stead with Merrill Lynch, and the bonus expected for the year – payable in January 1994 – was significantly less than he had hoped for and expected. Lynn and Donn had no significant savings. At that time, Lynn was not in a position to support

COMPLAINT

both of them.

34. In April of 1994, after less than year of marriage to Lynn, Donn was diagnosed with gastric-esophageal cancer. It was a malignant mass of significant size at the juncture of the esophagus and the stomach. On May 9, 1994, he had surgery at UCSF, with Lynn at this bedside and sleeping in his hospital room for ten days. The surgery removed his stomach, his spleen, gall bladder, and a significant part of Donn's esophagus. His prognosis was poor – he was not expected to live more than 6 months. The medical professionals told Lynn and Donn that they should spend the next 6 months preparing for Donn's death.

35. Lynn sold the small property management company in Los Angeles that she had founded and was running. For the next three years, she did not work and cared solely for Donn throughout his illness at great personal sacrifice.

36. Recognizing that they could not live on Donn's disability payments (and once he reached 65, his social security payments), Lynn needed to return to work. In the summer of 1997, Lynn applied for appointment to the Northern District of California Bankruptcy Court panel of Chapter 7 Trustees. In September 1997, she was accepted.

**The Scottsdale Property**

37. In 1995, Lynn's mother had a stroke while living in Scottsdale, Arizona. She was moved to a nursing home. On July 31, 1998, Lynn and Donn purchased the Scottsdale Condo. It was close to the nursing home, which enabled Lynn to frequently visit her mother. Her mother died in 2002.

38. No longer needing the condominium, Lynn and Donn sold it in November 2005. On or about March 16, 2011, when the buyer wished to relocate, Donn and Lynn repurchased the condominium. Lynn and Donn took title to the Scottsdale Condo as community property with right of survivorship.

**The Powell Street Residence**

39. As Lynn's trustee practice grew in San Francisco, she needed more space in which to operate her business. She found a house at 920 Powell in San Francisco. On March 31, 1999, Donn and Lynn took title to that property as husband and wife, as joint tenants.

40. Donn remained ill throughout this time. Lynn devoted substantial time and effort caring for him.

41. Almost bordering on a miracle, in a welcome surprise under the circumstances, on July 11,

2003, Donn and Lynn's twins – Anna and Jason – were born. That same year, Donn and Lynn settled the 2003 Schoenmann Family Trust. The trust provided that all property was to go to the surviving spouse upon the passing of the first, and upon the passing of the survivor, Donn's 50% interest would pass to his 6 issues (his three surviving children and his grandchild Celeste), and Lynn's 50% interest would pass to Anna and Jason.

**Idyllwild Property**

42.     After the twins were born, while the family resided in San Francisco, Lynn and Donn sought a second house in Southern California with trees and room for the children to play and grow outdoors. On November 13, 2003, Lynn and Donn purchased two adjoining parcels in Idyllwild, California – the Idyllwild Home and Idyllwood Lot. Lynn and Donn took title through their joint family trust.

**Ethel Avenue**

43.     In September 2010, Anna and Jason needed to enroll in a new school. They both had loved and were flourishing in the private school that they had been attending. The years 2010 – 2013 were particularly stressful for Lynn and Donn as they tried to get Anna and Jason on track in a school that suited them well.

44.     After three years of uncertainty surrounding the children's education, Lynn and Donn decided to move to Marin to enroll the children in the Mill Valley School District. On July 9, 2013, Lynn and Don bought 39 Ethel Avenue in Mill Valley. The house and office property were purchased as community property with right of survivorship.

**Donn's Serious Substance Abuse Disorder**

45.     The family faced additional challenges throughout much of the relevant time period. Donn, on top of the health problems caused by his cancer, abused and became addicted to opioids and other prescription medications.

46.     Lynn was forced to meet enormous challenges trying to help Donn as best she could, while protecting her children and running her busy and successful trustee practice.

//

//

## FIRST CAUSE OF ACTION
### (Quiet Title)

47. Plaintiff incorporates by reference the allegations contained in each paragraph above as though fully set forth here.

48. An action to quiet title is proper to establish title against adverse claims to real property or any interest in the property.

49. At the time of Donn's death, the recorded deeds for 39 Ethel Avenue, the Scottsdale Condo, and the Idyllwild Home and Lot, all provided that these properties were held by Donn and Lynn as community property with the right of survivorship. By operation of law, upon Donn's death, the Subject Properties passed outside of probate to Lynn as her separate property. The legal presumption is that these recorded deeds provide that the bankruptcy estate (through Lynn) is now 100% owner of the Subject Properties.

50. Pursuant to California Evidence Code Section 662, the facts recited in a written instrument, such as a deed, are conclusively presumed to be true.

51. Plaintiff seeks to quiet title against the claims of Defendants, and to confirm that each of them has no right, title, or interest in the properties or any part thereof. Lynn is entitled to quiet title to the Subject Properties as having been held in her name alone and that as of the date of this complaint the Subject Properties are property of the bankruptcy estate.

52. In sum, as debtor, Lynn is entitled to a declaration that the bankruptcy estate owns the Subject Properties in their entirety.

53. The Named Defendants will challenge the recorded deeds that were in place as of November 9, 2016 claiming they are invalid. If so, the July 27, 2016 (39 Ethel) and July 29, 2016 (Idyllwild) deeds, as the prior recorded deeds, would control. The July 27, 2016 deeds all provide that Lynn and Donn owned the Subject Properties as "community property with rights of survivorship." It is the Named Defendants' burden to prove that the July 2016 deeds are invalid.

54. Neither the Tentative Decision in the probate proceeding nor the Proposed Judgment reached the issue of validity of any recorded deeds, ownership of the Subject Properties, or what is property of the bankruptcy estate.

55. Finally, *even if* the prior two recorded deeds before Donn's death are determined to be

Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 10 of 66

COMPLAINT

invalid, Lynn would be entitled to prove that the deeds before that, the March 17, 2016 deeds are invalid, because (among other reasons) they were the product of undue influence by Stuart and improperly executed in breach of Donn's fiduciary duties as a spouse.

56.     If the March 17, 2016 deeds are found invalid, title would revert back to community property and be property of the bankruptcy estate. All the Subject Properties are held as community property because of the unilateral revocation of the family trust by Donn. 39 Ethel Avenue, Idyllwild Lot and Home, and the Scottsdale Condo all vest in Lynn outside of probate as the surviving spouse.

57.     Moreover, ***even if*** the last two sets of executed and recorded deeds were found to be invalid and the March 17, 2016 deeds found valid, the Subject Properties would be community property or Lynn and Donn would hold title as tenants-in-common, and, under 11 U.S.C. section 541(a)(2), Lynn's interest in the property would become property of the estate.

58.     Therefore, either Plaintiff is entitled to a judgment quieting title to the Subject Properties against all adverse interests, and a determination that she is the sole beneficial owner of the Subject Properties, or alternatively, she is entitled to a determination that the Subject Properties are community property or would be held as tenants-in-common and Lynn's interest in the property is property of the bankruptcy estate.

### SECOND CAUSE OF ACTION
(**Declaratory Relief**)

59.     Plaintiff incorporates by reference the allegations contained in each paragraph above as though fully set forth here.

60.     Plaintiff and the Named Defendants have (1) a definite and concrete dispute touching the legal relations of parties having adverse legal interests; (2) that is real and substantial; and (3) that admits of specific relief through a decree of a conclusive character.

61.     At the time of Donn's death, the deeds for the Subject Properties provided that these properties were held by Donn and Lynn as community property with the right of survivorship.

62.     By operation of law, upon Donn's death, the Subject Properties passed outside of probate to Lynn as her separate property. The legal presumption is that these recorded deeds provide that Lynn

COMPLAINT

(and now the bankruptcy estate) is the 100% owner of 39 Ethel Avenue, the Scottsdale Condo, and the Idyllwild Home and Lot.

63.     Plaintiff desires a declaration of her rights and remedies with respect to the disputed ownership interests of the Subject Properties. Such declaration is necessary and appropriate at this time because the bankruptcy court has exclusive jurisdiction to determine property included in the estate. 28 U.S.C. § 1334(e).

64.     To the extent that the Named Defendants challenge any of the deeds as invalid, is their burden to prove that by clear and convincing evidence. It is not affected by the Tentative Decision in the probate proceedings.

65.     Even if, for some reason, the last executed deeds were found to be invalid, the Subject Properties would be community property or be held as tenants-in-common, and under 11 U.S.C. § 541(a)(2), the Subject Properties are community property or would be held as tenants-in-common and Lynn's interest in the property is property of the bankruptcy estate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants as follows:

1.      For a judgment quieting title to the Subject Properties;

2.      For a judicial determination of Plaintiff's title to the Subject Properties against the adverse claims as of the date of this complaint;

3.      For a judicial declaration that Plaintiff is the full legal and beneficial owner of 39 Ethel Avenue, the Scottsdale Condo, and the Idyllwild Home and Lot, and that these properties are property of the estate; and

4.      For such other and further relief as the court may deem just and proper.

Dated: May 16, 2022                          DIAMOND MCCARTHY LLP


                                         By:   _/s/ Christopher D. Sullivan_
                                            Christopher D. Sullivan
                                            Special Litigation Counsel for
                                            E. Lynn Schoenmann

## VERIFICATION

I, Lynn E. Schoenmann, declare as follows:

I am the debtor in this bankruptcy proceeding, and Plaintiff in the present action. I have read the foregoing Verified Complaint for Quiet Title and Declaratory Relief and know its contents.

I have personal knowledge of the matters set forth in the foregoing Verified Complaint for Declaratory Relief and if called to testify, I would competently testify as to the matters stated herein. The matters stated in the foregoing documents are true of my own personal knowledge except as those matters which are stated on information and belief and, as to those matters, I believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Executed on 5/16, 2022 at Mill Valley, California.

Lynn E. Schoenmann

COMPLAINT

# EXHIBIT A

RECORDING REQUESTED BY
E. Lynn Schoenmann
Donn R. Schoenmann

When recorded mail this
Deed and tax statements to:
E. Lynn Schoenmann
Donn R. Schoenmann
39 Ethel Ave.
Mill Valley, CA 94941

# 2018-0144536

04/16/2018 08:27 AM Fee: $ 92.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**778**

Documentary Transfer Tax $-0-
Transfer without consideration from husband and wife to husband and wife
Confirms community property interest

A.P.N. 563073005-5

By:

## GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

We, E. Lynn Schoenmann                    and Donn R. Schoenmann
husband and wife, grant to E, Lynn Schoenmann                                    and
Donn R. Schoenmann                                                    , husband and
wife, as community property with right of survivorship, the real property situated in the City of Idyllwild
Riverside            County, State of California, commonly known as 25380 Green Oaks Crt., Idyllwild, CA ,
more particularly described as follows on Exhibit A attached hereto and made a part hereof.

Executed on Nov 9, 2016        , at Mill Valley        , California.

E. Lynn Schoenmann                                    Donn R. Schoenmann

### ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California                    )
County of MARIN                       )

On NOV. 9, 2016                before me, FAATI MAROOPI, NOTARY PUBLIC.

(HERE INSERT NAME AND TITLE OF THE OFFICER)

personally appeared
E. LYNN SCHOENMANN AND DONN R. SCHOENMANN
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

FAATI MAROOFI
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2149163
MARIN COUNTY
My Comm. Exp. May 13, 2020

(SEAL)

NONJC-024 (Rev. 01/01/2015)        GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP
*Martin Dean's*
**ESSENTIAL FORMS™**

Schoenmann, Donn

Exhibit "A"

Legal Description

Lot 21 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 through 88, inclusive of maps, Riverside County Records, together with that portion of Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of maps, Riverside County Records, and more commonly known as 25380 Green Oaks Court, Idyllwild, VA 92549

# EXHIBIT B

RECORDING REQUESTED BY
E. Lynn Schoenmann
Donn R. Schoenmann

When recorded mail this
Deed and tax statements to:
E. Lynn Schoenmann
Donn R. Schoenmann
39 Ethel Ave.
Mill Valley, CA 94941

**2018-0144537**

04/16/2018 08:27 AM Fee: $ 92.00

Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**778**

Documentary Transfer Tax $-0-
Transfer without consideration from husband and wife to husband and wife
Confirms community property interest.

A.P.N. 563073003-3

By:

## GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

We, E. Lynn Schoenmann          and Donn R. Schoenmann
husband and wife, grant to E. Lynn Schoenmann                                          and
Donn R. Schoenmann                                                                    , husband and
wife, as community property with right of survivorship, the real property situated in the City of unincorporated area of
Riverside          County, State of California, commonly known as
more particularly described as follows on Exhibit A attached hereto and made a part hereof.

Executed on Nov 9, 2016 , at Mill Valley , California.

_____          _____
E. Lynn Schoenmann                          Donn R. Schoenmann

**ACKNOWLEDGMENT**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California                )
County of MARIN          )

On Nov. 9, 2016          before me, FAATI MAROOFI, NOTARY PUBLIC.
                                                    (HERE INSERT NAME AND TITLE OF THE OFFICER)

personally appeared
          E. LYNN SCHOENMANN AND DONN R. SCHOENMAN
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

| FAATI MAROOFI NOTARY PUBLIC - CALIFORNIA COMMISSION # 2149163 MARIN COUNTY My Comm. Exp. May 13, 2020 |
|---|

(SEAL)

NONJC-024 (Rev. 01/01/2015)          **GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**
Martin Dean's
**ESSENTIAL FORMS™**
                                        Schoenmann, Donn

Exhibit "A"

Legal Description

Lot 20 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 through 88, inclusive of maps, Riverside County Records

# EXHIBIT C





**2018-0009764**

**RECORDING REQUESTED BY:**

Robert J. Begley, Attorney at Law

**WHEN RECORDED MAIL TO:**
Robert J. Begley, Attorney at Law
655 Redwood Hwy., Suite 300
Mill Valley, CA 94941

Recorded
Official Records
County of
Marin
RICHARD N. BENSON
Assessor-Recorder
County Clerk

01:30PM 19-Mar-2018

REC FEE      20.00

JN
Page 1 of 3

THIS SPACE FOR RECORDER'S USE ONLY

## Grant Deed: Community Property With Right of Survivorship

DOCUMENT TITLE

The undersigned declares that the document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes and Jobs Act - SB2 (Government Code §27388.1)

Reason for exemption:

☐ Not related to real property - GC 27388.1(a)(1)

☐ Recorded concurrently "in connection with" a transfer subject to the imposition of Documentary Transfer Tax - GC 27388.1(a)(2)

☑ Transfer of real property that is a residential dwelling to an owner-occupier _or_ recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner occupier - GC 27388.1(a)(2)

☐ Maximum $225.00 fee per transaction reached - GC 27388.1(a)(1)

|  | Robert J. Begley, Attorney at Law | 3/8/2018 |
|---|---|---|
| Signature | Print Name | Date |

---

THIS PAGE IS ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
DECLARATION OF BUILDING HOMES AND JOBS ACT FEE EXEMPTION

ADDITIONAL RECORDING FEE APPLIES

---

Cover Page - SB2 Exemptions

RECORDING REQUESTED BY
E. Lynn Schoenmann
Donn Schoenmann

When recorded mail this
Deed and tax statements to:
E. Lynn Schoenmann
Donn R. Schoenmann
39 Ethel Ave.
Mill Valley, CA 94941

Documentary Transfer Tax $-0-
Transfer without consideration from husband and wife to husband and wife
*Confirms community property interest.*

A.P.N. 028-101-08

By:

### GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

We, E. Lynn Schoenmann    and  Donn R. Schoenmann    and
husband and wife, grant to E. Lynn Schoenmann    and
Donn R. Schoenmann    , husband and
wife, as community property with right of survivorship, the real property situated in the City of Mill Valley
Marin    County, State of California, commonly known as 39 Ethel Ave., Mill Valley, CA
more particularly described as follows on Exhibit A attached hereto and made a part hereof.

Executed on *Nov 9, 2016*    , at *Mill Valley*    , California.

E. Lynn Schoenmann                    Donn R. Schoenmann

### ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not the truthfulness,
> accuracy, or validity of that document.

State of California                          )
County of *Marin*                           )

On *Nov. 9, 2016.*    before me, *FAATI MAROOFI, NOTARY PUBLIC.*
(HERE INSERT NAME AND TITLE OF THE OFFICER)

personally appeared *E. Lynn Schoenmann and Donn R. Schoenmann* —

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature



FAATI MAROOFI
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2149163
MARIN COUNTY
My Comm. Exp. May 13, 2020

(SEAL)

NONJC-024 (Rev 01/01/2015)            **GRANT DEED: COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**

*Martin Dean's*
**ESSENTIAL FORMS™**

Schoenmann, Donn

Escrow No.: 13-281465-OH
Locate No.: CAFNT0921-0921-0001-0000281465
Title No.: 13-281465-DP

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MILL VALLEY, COUNTY OF MARIN, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTH LINE OF ETHEL AVENUE, WHICH POINT IS THE COMMON CORNER OF LOTS NO. 1 AND 2 OF BLOCK NO. 14 OF THE MAP HEREINAFTER REFERRED TO AND RUNNING THENCE NORTH 11 DEGREE 11' EAST 163.02 FEET; THENCE NORTH 76 DEGREE 30' EAST 43.80 FEET; THENCE SOUTH 23 DEGREE 43' EAST 108.35 FEET; THENCE SOUTH 54 DEGREE 31' WEST 21.30 FEET; THENCE SOUTH 34 DEGREE 36' WEST 39.71 FEET; THENCE SOUTH 57 DEGREE 30' WEST 79.14 FEET; THENCE SOUTH 32 DEGREE 47' WEST 20 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

BEING A PORTION OF LOTS NO. 1 AND 2, IN BLOCK 14, AS THE SAME ARE LAID DOWN AND DELINEATED AND AS DESIGNATED UPON THAT CERTAIN MAP ENTITLED, "TAMALPAIS LAND AND WATER COMPANY, MAP NO. 5", WHICH MAP IS ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MARIN, STATE OF CALIFORNIA, TO WHICH MAP REFERENCE IS HEREBY MADE FOR A FURTHER OR MORE PARTICULAR DESCRIPTION OF SAID LAND.

APN: 028-101-08

# EXHIBIT D

56
sa

Person requesting recordation:
E. Lynn Schoenmann
DonnR. Schoenmann

After recordation mail to:
E. Lynn Schoenmann
Donn R. Schoenmann
39 Ethel Ave.
Mill Valley, CA 94941

# Grant Deed

GRANT DEED, made this _9_ day of _November_ 2016 by the Grantor(s):
E. Lynn Schoenmann, a married woman and Donn R. Schoenmann, a married man as
community property

To the Grantee(s):
E. Lynn Schoenmann, a married woman and Donn R. Schoenmann, a married man, as
community property with rights of survivorship

WITNESSETH, that the said Grantor, for and in consideration of:

the receipt and sufficiency of which is hereby acknowledged and received, does hereby remise,
release and grant unto the GRANTEE(S) and his/her heirs and assigns, the following premises
located in Maricopa County, State of Arizona legally described as follows:

LOT 117, of the HERITAGE SCOTTSDALE, ACCORDING TO DECLARATION OF
HORIZONTAL PROPERTY REGIME RECORDED IN DOCUMENT NO. 90-0261768,
DOCUMENT NO. 91-0578637, DOCUMENT NO 91-0578638, DOCUMENT NO.
92-0144638, DOCUMENT NO. 92-0144640, DOCUMENT NO. 92-0277321, DOCUMENT
NO. 92-0277322, DOCUMENT NO. 93-0024944, DOCUMENT NO. 93-0786432,
DOCUMENT NO. 96-0864288, AND IN DOCUMENT NO. 96-0849545, AND PLAT
RECORDED IN BOOK 291 OF MAPS, PAGE 35, RECORDS OF MARICOPA COUNTY
ARIZONA.

TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS AS SET
FORTH IN SAID DECLARATION AND PLAT.

COMMONLY KNOWN AS 4200 N. Miller Road, Unity 117, Scottsdale, AZ 85251

Exempt as per Statute: _11-1134 B. 10_ Exemption Code: _____

1

Also known as street and number:

4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251

Parcel ID Number: 173-52-083A

IN WITNESS WHEREOF, the grantor has executed this deed on the date set forth above.

Signature _____          Signature _____
Print Name _E. LYNN SCHOENMANN_          Print Name _DONN R. SCHOENMANN_
Capacity _____          Capacity _____

Signature _____          Signature _____
Print Name _____          Print Name _____
Capacity _____          Capacity _____

STATE OF ___CALIFORNIA___ )

COUNTY OF ___MARIN___

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _Nov. 9, 2016_ Before me, _FAATI MAROOFI, NOTARY PUBLIC_, personally appeared _E. LYNN SCHOENMANN AND DONN R. SCHOENMANN_

_____ , ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

Notary Signature: _Faati Maroofi_

Print Name: _FAATI MAROOFI_

My Commission Expires _5/13/2020_

FAATI MAROOFI
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2149163
MARIN COUNTY
My Comm. Exp. May 13, 2020

This Document Prepared By:

2

# EXHIBIT E



330 Primrose Road, Suite 502
Burlingame, CA 94010
Office Phone: 650-696-1725
Office Fax: 650-319-8138
Email: aross@nat.com

North American Title Company, Inc.
330 Primrose Road, Suite 502
Burlingame, CA 94010
Attn: Annette Ross

Your Ref:
Our Order No.: 55913-21-01166
Property Address: 25380 Green Oaks Drive, Idyllwild, CA 92549

Preliminary Report Dated as of January 18, 2022 at 12:00 AM.

IN RESPONSE TO THE ABOVE REFERENCED APPLICATION FOR A POLICY OF TITLE INSURANCE,

### North American Title Insurance Company

Hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and limitations on covered risks of said Policy or Policies are set forth in Exhibit A attached. The Policy to be issued may contain an Arbitration Clause. When the amount of insurance is less than that set forth in the Arbitration Clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the Parties. Limitations on covered risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a deductible amount and a maximum dollar limit of liability for certain coverages are also set forth in Exhibit A. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The form of Policy of title insurance contemplated by this report is:
ALTA Loan Policy
America First Homeowner Policy (ALTA/CLTA Homeowner's Policy of Title Insurance)

Please note that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) can only be issued on transactions involving individuals as purchasers and residential 1-4 properties. Any indication that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) will be issued in a transaction that does not meet these criteria is hereby revised to state that the policy contemplated is a Standard Coverage Policy.

Juan Carlos Pena, Title Officer II

**SCHEDULE A**

1.  The estate or interest in the land herein after described or referred to covered by this report is:

    Fee Simple

2.  Title to said estate or interest at the date hereof is vested in:

    E. Lynn Schoenmann, an unmarried woman.

    Subject to item # 13

3.  Real Property in the unincorporated area of Idyllwild, County of Riverside, State of California, described as follows:

    **See attached Legal Description**

Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 32 of 66

**LEGAL DESCRIPTION**

Real Property in the unincorporated area of Idyllwild, County of Riverside, State of California, described as follows:

PARCEL 1:

LOT 21 OF TRACT NO. 2790, AS SHOWN BY MAP ON FILE IN BOOK 54, PAGES 86 THROUGH 88 OF MAPS, RIVERSIDE COUNTY RECORDS, TOGETHER WITH THAT PORTION OF LOT 22 OF TRACT NO. 2790, AS SHOWN BY MAP ON FILE IN BOOK 54, PAGES 86 THROUGH 88 OF MAPS, RIVERSIDE COUNTY RECORDS, LYING SOUTH OF THE FOLLOWING DESCRIBED LINE:
COMMENCING AT THE NORTHEAST CORNER OF SAID LOT 22; THENCE S.00°21'08"W., 89.45 FEET, ALONG THE EAST LINE OF SAID LOT 22, TO THE POINT OF BEGINNING OF SAID LINE TO BE DESCRIBED; THENCE S. 6°48'46"W., 147.01 FEET, TO THE MID-POINT OF THE WESTERLY LINE OF SAID LOT 22 AND THE TERMINATION OF SAID LINE TO BE DESCRIBED.

SAID MID-POINT OF LOT 22 BEING EQUAL DISTANCE FROM THE NORTHWEST CORNER AND FROM THE SOUTHWEST CORNER OF LOT 22, AS MEASURED ALONG THE WESTERLY PROPERTY LINE OF SAID LOT. SAID DESCRIPTION IS PURSUANT TO LOT LINE ADJUSTMENT NO. 4544 APPROVED BY RIVERSIDE COUNTY PLANNING DEPARTMENT JANUARY 16, 2003

PARCEL 2:

LOT 20 OF TRACT NO. 2790, AS SHOWN BY MAP ON FILE IN BOOK 54, PAGES 86 THROUGH 88 INCLUSIVE OF MAPS, RIVERSIDE COUNTY RECORDS

APN:  563-073-005 and 563-073-003

**SCHEDULE B**

At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions in the policy form designated on the face page of this report would be as follows:

> NOTE:  IT IS THE RESPONSIBILITY OF ALL PARTIES INVOLVED TO REVIEW EVERY ITEM CONTAINED IN THIS PRELIMINARY REPORT, INCLUDING BUT NOT LIMITED TO THE ITEM(S) HIGHLIGHTED HEREIN FOR YOUR IMMEDIATE ATTENTION TO BE PAID AND/OR RESOLVED AT OR BEFORE CLOSING, BEFORE A TITLE POLICY IS ISSUED.

1. General and special taxes and assessments for the fiscal year 2022-2023, a lien not yet due or payable.

2. General and special taxes and assessments for the fiscal year 2021-2022 .

   First Installment:  $3,409.57 PAID
   Penalty: $
   Second Installment:  $3,409.57 OPEN (Due by April 12, 2021)
   Penalty:  $379.01
   Tax Rate Area:   071-022
   A.P. No.:  563-073-005

   Affects PARCEL 1 .

3. General and special taxes and assessments for the fiscal year 2021-2022 .

   First Installment:  $384.54 PAID
   Penalty: $
   Second Installment:  $384.54 OPEN (Due by April 12, 2021)
   Penalty:  $76.51
   Tax Rate Area:  071-022
   A.P. No.:  563-073-003

   Affects PARCEL 2 .

4. The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

5. Water rights, claims to water, whether or not shown by the Public Records.

6. An easement for a trail or roadway and incidental purposes, recorded August 21, 1950 as Instrument No. 3369 of Official Records.

   In Favor of: State of California
   Affects: said land

7. An easement shown or dedicated on the Map as referred to in the legal description for Public utilities and incidental purposes.

   Affects as shown on said map.

8. The effect of a recital on said tract/parcel map which provides among other things, that all floodway and natural drainage courses shown on said map be kept free of buildings, obstructions or encroachments by land fills.

9. Covenants, conditions, restrictions and easements in the document recorded  October 6, 1965 as/in Instrument No. 114641  of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but omitting

any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state and federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document.

10. An easement for public utilities and incidental purposes, recorded January 7, 1966 as Instrument No. 2486 of Official Records.

   In Favor of: Southern California Edison Company, a Corporation and California Water and Telephone Company, a Corporation
   Affects: All those certain strips intended for use as public utilities easement, more particularly designated and delineated as
   P.U.E.'s on the Map of said Tract

11. Notice of pendency of action recorded January 31, 2019 as Instrument No. 2019-0034798 of Official Records.

   Court: Superior Court of The State of California County of Marin
   Case No.: PR1801087
   Plaintiff: Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann, and Stuart Gordon Schoenmann as Executor of the Estate of Donn R. Schoenmann
   Defendant: E. Lynn Schoenmann and 920 Powell Street, LLC
   Purpose: The action affects title to or right to possess the real property

   Affects PARCEL 1 .

12. Notice of pendency of action recorded January 31, 2019 as Instrument No. 2019-0034799 of Official Records.

   Court: Superior Court of The State of California County of Marin
   Case No.: PR1801087
   Plaintiff: Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann, and Stuart Gordon Schoenmann as Executor of the Estate of Donn R. Schoenmann
   Defendant: E. Lynn Schoenmann and 920 Powell Street, LLC
   Purpose: The action affects title to or right to possess the real property

   Affects Parcel 2 .

13. Proceedings pending in the Bankruptcy Court of the Northern District of the U.S. District Court, California, entitled in re: E. Lynn Schoenmann, debtor, Case No. 22-30028, wherein a petition for relief was filed on January 14, 2022.

14. We find no open deeds of trust, and will require the Open Loans Affidavit form to be submitted for review prior to close.


*********************END OF REPORT*********************

_____

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;NOTES&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

_____

A.      NOTICE OF RECORDING PROCEDURE

Pursuant to Cal. Revenue & Tax Code §480.3, all Deeds and other Documents that reflect a change in ownership must be accompanied by a Preliminary Change of Ownership Report to be completed by the transferee. If this special report is not presented at the time of recording, an additional recording fee of $20.00, as required by law, will be charged. Preliminary Change in Ownership forms, instructions on how to complete them, and a nonexclusive list of documents that are affected by this change, are available from the County Recorder's Office or the Office of the County Assessor.

Effective January 1, 2018, Cal. Government Code §27388.1 imposes an additional fee of $75.00 to be paid at the time of recording for every real estate instrument, paper, or notice required or permitted by law to record, except those expressly exempted from payment.

B.      GOOD FUNDS LAW

Under Section 12413.1 of the California Insurance Code, North American Title Company may only make funds available for disbursement in accordance with the following rules:

Same day availability.  Disbursement on the date of deposit is allowed only when funds are deposited to North American Title Company by Cash or Electronic Transfer (Wire).  Cash will be accepted only under special circumstances and upon approval by management.

Next business day availability.  If funds are deposited to North American Title Company by cashier's checks, certified checks or teller's checks, disbursement may be on the next business day following deposit.  A "teller's check" is one drawn by an insured financial institution against another insured financial institution (e.g., a savings and loan funding with a check drawn against a FDIC insured bank).

Second business day availability.  If the deposit is made by checks other than those described in paragraphs 1 and 2 above, disbursement may occur on the day when funds must be made available to depositors under Federal Reserve Regulation CC.  In most cases, these checks will be available on the second business day following deposit.  (For further details, consult California Insurance Code Section 12413, et seq. and Regulation CC).

These are the minimum periods before funds will be made available.  North American Title Company **is** not obligated to disburse funds at the expiration of the time periods above, and expressly reserves the right to require additional time before disbursing on deposited funds.  Close of escrow and final disbursement will not be made based on deposits in the form of personal checks, corporate checks, credit union checks, money market checks, travelers checks and official checks until confirmation of final clearance of the funds.

North American Title Company will not be responsible for accruals of interest or other charges resulting from compliance with the disbursement restrictions imposed by state law.

North American Title Company charges for recording the transaction documents include charges for services performed by North American Title Company, in addition to an estimate of payments to be made to governmental agencies.

Note:  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

C.     The map attached, if any, may or may not be a survey of the land depicted hereon. North American Title Company expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

Referring Party:    Doma Insurance Agency, Inc., Doma Insurance Agency of Arizona, Inc., Doma Title of California, Inc., Doma Insurance Agency of Colorado, Inc., Doma Insurance Agency of Florida, Inc., Doma Insurance Agency of Illinois, Inc., Doma Insurance Agency of Indiana, LLC, Doma Insurance Agency of Minnesota, Inc., Doma Insurance Agency of Nevada, Inc., Doma Insurance Agency of New Jersey, Inc., Doma Insurance Agency, Inc., dba Doma Settlement Services, Inc., Doma Insurance Agency of New Jersey, Inc., dba Doma Abstract Agency, Doma Insurance Agency of Texas, Inc., Doma Insurance Agency of Utah, LLC ("Doma")

This is to give notice that Doma has a business relationship with North American Title Insurance Company ("NATIC"). Doma and NATIC, directly or indirectly, are wholly owned subsidiaries of States Title Holding, Inc. Because of this relationship, this referral of services may provide Doma a financial or other benefit.

Set forth below are the estimated charges or range of charges for the settlement services provided by NATIC. You are NOT required to use NATIC as a condition for closing your transaction.

THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

---

**Title Insurance Fees**

NAT provides closing services and title insurance through numerous title insurance underwriters, one of which is NATIC. If NATIC is selected as the title insurer, the following fees apply:

10% - 40% of costs for lender's and/or owner's title insurance, as applicable, depending on the property state, and as shown on the Loan Estimate and/or Closing Disclosure provided by your lender.

Contact your local Doma representative for a more detailed title insurance quote based on your specific transaction.

---

ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that NAT is referring me/us to purchase the above-described settlement service and may receive a financial or other benefit as the result of this referral.

**Buyer/Borrower:**                                    **Seller:**

_____          _____

_____          _____

_____          _____

_____          _____

Date: _____          Date: _____

# NORTH AMERICAN TITLE COMPANY, INC.

330 Primrose Road, Suite 502, Burlingame, CA 94010
Office Phone: 650-696-1725  Office Fax: 650-319-8138  Email:  aross@nat.com

**Closing Protection Letters can be ordered directly by emailing cacpl@doma.com with your title order number and property address.**

Attention:

Your Ref:
Our Order No.:  55913-21-01166

## LENDERS SUPPLEMENTAL REPORT

Dated as of January 18, 2022 at 12:00 AM.

Title Officer: Juan Carlos Pena

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan form policy of Title Insurance:

Our ALTA Loan Policy, when issued, will contain Endorsement Nos. 100 and 116.

There is located on said land a Single Family
Known as:  25380 Green Oaks Drive, Idyllwild, CA 92549
City of Idyllwild
County of Riverside
State of California.

According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

None

Case: 22-03024    Doc# 1    Filed: 05/16/22    Entered: 05/16/22 17:58:45    Page 39 of 66

# Privacy Notice

## The Doma Family of Companies

| FACTS | WHAT DOES THE DOMA FAMILY OF COMPANIES DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some, but not all, sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Transaction history and payment history<br>• Purchase history and account balances |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons the Doma Family of Companies chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Doma share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**<br>Such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**<br>To offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**<br>Information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**<br>Information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call 1 (855) 306-0237 |
|---|---|

**Other important information**

*California Residents – Effective January 1, 2020, the California Consumer Privacy Act allows California residents, upon a verifiable consumer request, to request that a business that collects consumers' personal information give consumers access, in a portable and (if technically feasible) readily usable form, to the specific pieces and categories of personal information that the business has collected about the consumer, the categories of sources for that information, the business or commercial purposes for collecting the information, and the categories of third parties with which the information was shared. California residents also have the right to submit a request for deletion of information under certain circumstances. If a business does not produce the information or delete the consumer's personal information as requested, it must provide an explanation in terms of the exemptions and exceptions provided under the CCPA. To contact us with questions about our compliance with the CCPA, call 1 (650) 419-3827 or email info@doma.com.

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The Doma Family of Companies (identified below), which offers title insurance and settlement services. |

## What we do

| | |
|---|---|
| **How does Doma protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secure files and buildings. |
| **How does Doma collect my personal information?** | We collect your personal information, for example, when you<br><br>• Apply for insurance;<br>• Apply for financing;<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your government-issued ID<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account – unless you tell us otherwise. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• Nonaffiliates we share with can include collection agencies, IT service providers, companies that perform marketing services on our behalf, and consumer reporting agencies. |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• Doma doesn't jointly market. |

The Doma Family of Companies consists of the following entities:

| | |
|---|---|
| Doma Holdings, Inc. | Doma Insurance Agency of Texas, Inc. |
| States Title Holding, Inc. | Doma Insurance Agency of Utah, LLC |
| Doma Corporate, LLC | Doma Title Insurance, Inc. |
| Doma Home Insurance Services, LLC | Doma Trustee Services, LLC |
| Doma Insurance Agency, Inc. | Doma Insurance Agency of Arizona, Inc. |
| Doma Insurance Agency of Colorado, Inc. | Doma Title of California, Inc. |
| Doma Insurance Agency of Florida, Inc. | NASSA LLC |
| Doma Insurance Agency of Illinois, Inc. | North American Title Insurance Company |
| Doma Insurance Agency of Indiana, LLC | North American Asset Development, LLC |
| Doma Insurance Agency of Minnesota, Inc. | North American Services, LLC |

Case: 22-03024    Doc# 1    Filed: 05/16/22    Entered: 05/16/22 17:58:45    Page 41 of 66

| Doma Title Agency of Nevada, Inc. | Spear Agency Acquisition Inc. |
|---|---|
| Doma Insurance Agency of New Jersey, Inc. | States Title, LLC |
| | Title Agency Holdco, LLC |

Prelim
55913-21-01166
Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 42 of 66

## CLTA STANDARD COVERAGE POLICY - 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.     (a)     Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)     Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate
   or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:

a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
c. that result in no loss to You; or
d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b. in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 44 of 66

EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

**[PART I**

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a)  Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. ]

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

**2006 ALTA OWNER'S POLICY (06-17-06)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)    the occupancy, use, or enjoyment of the Land;
    (ii)   the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)   environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
1.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
2.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
3.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
4.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a)  Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 46 of 66

# OPEN LOANS AFFIDAVIT

Order No.: 55913-21-01166                                                 Escrow No.: 55913-21-01166

I/We the undersigned being of legal age, hereby declare and swear, under penalty of perjury that the following information, declarations, representations and answers are true, correct and complete:

1.  I/We am/are the current owner(s) of the property in this transaction which has an address of:

    25380 Green Oaks Drive, Idyllwild, CA 92549

2.  That the following is a complete and comprehensive list of all open loans taken out against said land:
    **(If no open loans, please write NONE on the 1st Current Lender Line and initial).**

    1.) Current Lender: _____ Loan Balance $_____

    Original Lender: _____ Original Loan Amount: $ _____

    Are you in default of this Loan: ☐ YES ☐ NO          IF YES, how long (_____) MONTHS

    Have you requested or do you have a forbearance agreement for this loan:   ☐ YES ☐ NO

    2.) Current Lender: _____ Loan Balance $_____

    Original Lender: _____ Original Loan Amount: $ _____

    Are you in default of this Loan: ☐ YES ☐ NO          IF YES, how long (_____) MONTHS

    Have you requested or do you have a forbearance agreement for this loan:   ☐ YES ☐ NO

    3.) Current Lender: _____ Loan Balance $_____

    Original Lender: _____ Original Loan Amount: $ _____

    Are you in default of this Loan: ☐ YES ☐ NO          IF YES, how long (_____) MONTHS

    Have you requested or do you have a forbearance agreement for this loan:   ☐ YES ☐ NO

    **Attach additional page if there are more than three outstanding loans.**

3.  I/We understand and acknowledge that this Affidavit is made for the protection and benefit of North American Title Company, Inc. and for all other parties hereafter dealing with or who may acquire an interest in said Property and for the purpose of inducing North American Title Company, Inc. (including its affiliates and underwriters) to insure title to said Property. I/We am/are fully aware and know that North American Title Company, Inc. will rely on this Affidavit and would not insure title without it.  We also hereby agree to indemnify and hold North American Title Company, Inc. harmless and to become fully financially responsible for any loss that may occur to North American Title Company, Inc. or any other parties if any of the information, declarations, representations and answers turn out to not be true, correct and/or complete, whether by accidental omission or actual deceit and/or fraud.

_____
E. Lynn Schoenmann



Case: 22-03024    Doc# 1    Filed: 05/16/22    Entered: 05/16/22 17:58:45    Page 48 of 66

# EXHIBIT F



330 Primrose Road, Suite 502
Burlingame, CA 94010
Office Phone: 650-696-1725
Office Fax: 650-319-8138
Email: aross@nat.com

North American Title Company, Inc.
330 Primrose Road, Suite 502
Burlingame, CA 94010
Attn: Annette Ross

Your Ref:
Our Order No.: 55913-1617239
Property Address: 39 Ethel Avenue, Mill Valley, CA 94941

Preliminary Report Dated as of January 4, 2022 at 12:00 AM.

IN RESPONSE TO THE ABOVE REFERENCED APPLICATION FOR A POLICY OF TITLE INSURANCE,

### North American Title Insurance Company

Hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and limitations on covered risks of said Policy or Policies are set forth in Exhibit A attached. The Policy to be issued may contain an Arbitration Clause. When the amount of insurance is less than that set forth in the Arbitration Clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the Parties. Limitations on covered risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a deductible amount and a maximum dollar limit of liability for certain coverages are also set forth in Exhibit A. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The form of Policy of title insurance contemplated by this report is:
ALTA Loan Policy
America First Homeowner Policy (ALTA/CLTA Homeowner's Policy of Title Insurance)

Please note that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) can only be issued on transactions involving individuals as purchasers and residential 1-4 properties. Any indication that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) will be issued in a transaction that does not meet these criteria is hereby revised to state that the policy contemplated is a Standard Coverage Policy.

Juan Carlos Pena, Title Officer II

**SCHEDULE A**

1.  The estate or interest in the land herein after described or referred to covered by this report is:

    Fee Simple

2.  Title to said estate or interest at the date hereof is vested in:

    E. Lynn Schoenmann, an unmarried woman.

    Subject to item # 13

3.  Real Property in the City of Mill Valley, County of Marin, State of California, described as follows:

    **See attached Legal Description**

**LEGAL DESCRIPTION**

Real Property in the City of Mill Valley, County of Marin, State of California, described as follows:

BEGINNING AT A POINT IN THE NORTH LINE OF ETHEL AVENUE, WHICH POINT IS THE COMMON CORNER OF LOTS NO. 1 AND 2 OF BLOCK NO. 14 OF THE MAP HEREINAFTER REFERRED TO AND RUNNING THENCE NORTH 11 DEGREE 11' EAST 163.02 FEET; THENCE NORTH 76 DEGREE 30' EAST 43.80 FEET; THENCE SOUTH 23 DEGREE 43' EAST 108.35 FEET; THENCE SOUTH 54 DEGREE 31' WEST 21.30 FEET; THENCE SOUTH 34 DEGREE 36' WEST 39.71 FEET; THENCE SOUTH 57 DEGREE 30' WEST 79.14 FEET; THENCE SOUTH 32 DEGREE 47' WEST 20 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

BEING A PORTION OF LOTS NO. 1 AND 2, IN BLOCK 14, AS THE SAME ARE LAID DOWN AND DELINEATED AND AS DESIGNATED UPON THAT CERTAIN MAP ENTITLED, "TAMALPAIS LAND AND WATER COMPANY, MAP NO. 5", WHICH MAP IS ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MARIN, STATE OF CALIFORNIA, TO WHICH MAP REFERENCE IS HEREBY MADE FOR A FURTHER OR MORE PARTICULAR DESCRIPTION OF SAID LAND.

APN:   028-101-08

**SCHEDULE B**

At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions in the policy form designated on the face page of this report would be as follows:

NOTE:  IT IS THE RESPONSIBILITY OF ALL PARTIES INVOLVED TO REVIEW EVERY ITEM CONTAINED IN THIS PRELIMINARY REPORT, INCLUDING BUT NOT LIMITED TO THE ITEM(S) HIGHLIGHTED HEREIN FOR YOUR IMMEDIATE ATTENTION TO BE PAID AND/OR RESOLVED AT OR BEFORE CLOSING, BEFORE A TITLE POLICY IS ISSUED.

1. General and special taxes and assessments for the fiscal year 2022-2023, a lien not yet due or payable.

2. General and special taxes and assessments for the fiscal year 2021-2022 .

   First Installment:  $14,913.24 PAID
   Penalty:  $
   Second Installment:  $14,913.24 OPEN (Due By: April 10, 2022)
   Penalty:  $
   Tax Rate Area:  005-000
   A.P. No.:   028-101-08

3. The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4. The lien of special tax for the following community facilities district, which tax is collected with the county taxes.
   District: MV-LIB CFD 96-1

5. The lien of special tax for the following community facilities district, which tax is collected with the county taxes.
   District: MV CFD 2016-1

6. The lien of bonds and assessment liens, if applicable, collected with the general and special taxes.

7. Easement for the free and natural flow of the creek across the herein described property as the same may now exist

8. Reservation of water flowing in any creek together with right of appropriation and diversion as contained in the Deed from Tamalpais Land and Water Company, a corporation to George B. Van Dyke, recorded July 5, 1890 In Book 14 of Deeds at Page 41, Marin County Records

9. The terms and provisions contained in the document entitled Agreement, executed by and between Lucille and Claude Edenfield and Lee Inesi and Helen Lydell, recorded May 8, 1968, as Instrument No. Book 2210, Page 8 of Official Records.

10. An easement for Sanitary sewer purposes and incidental purposes, recorded August 27, 1968 as Book 2235, Page 536 of Official Records.
    In Favor of:  City of Mill Valley, a Municipal Corporation
    Affects:  Said Land

    Said easement contains certificate of acceptance by City of Mill Valley, recorded August 27, 1968 in Book 2235 of Official Records at Page 537, Marin County Records

11. A Deed of Trust to secure an original indebtedness of $1,333,850.00 recorded July 09, 2013 as Instrument No. 2013-0046591 of Official Records.
    Dated:  June 20, 2013

Trustor: Donn R. Schoenmann and E. Lynn Schoenmann, husband and wife
Trustee: Fidelity National Title Insurance Company
Beneficiary: First Republic Bank

Please obtain written verification from the borrower that no forbearance or modification agreement is in effect.

12. Notice of pendency of action recorded January 18, 2019 as Instrument No. 2019-0001748 of Official Records.

Court: Superior Court of The State of California County of Marin
Case No.: PR1801087
Plaintiff: Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann, and Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
Defendant: E. Lynn Schoenmann
Purpose: Notice of Pendency of Action (Lis Pendens)

13. E. Lynn Schoenmann, subject to proceedings pending in the Bankruptcy Court of the U.S. District Court District of the U.S. District Court, California, entitled in re: E. Lynn Schoenmann, debtor, Case No. 22-30028, wherein a petition for relief was filed on January 14, 2022.

********************END OF REPORT********************

_____

********************NOTES********************

_____

A.     NOTICE OF RECORDING PROCEDURE

Pursuant to Cal. Revenue & Tax Code §480.3, all Deeds and other Documents that reflect a change in ownership must be accompanied by a Preliminary Change of Ownership Report to be completed by the transferee. If this special report is not presented at the time of recording, an additional recording fee of $20.00, as required by law, will be charged. Preliminary Change in Ownership forms, instructions on how to complete them, and a nonexclusive list of documents that are affected by this change, are available from the County Recorder's Office or the Office of the County Assessor.

Effective January 1, 2018, Cal. Government Code §27388.1 imposes an additional fee of $75.00 to be paid at the time of recording for every real estate instrument, paper, or notice required or permitted by law to record, except those expressly exempted from payment.

B.     GOOD FUNDS LAW

Under Section 12413.1 of the California Insurance Code, North American Title Company, Inc. may only make funds available for disbursement in accordance with the following rules:

Same day availability. Disbursement on the date of deposit is allowed only when funds are deposited to North American Title Company, Inc. by Cash or Electronic Transfer (Wire). Cash will be accepted only under special circumstances and upon approval by management.

Next business day availability. If funds are deposited to North American Title Company, Inc. by cashier's checks, certified checks or teller's checks, disbursement may be on the next business day following deposit. A "teller's check" is one drawn by an insured financial institution against another insured financial institution (e.g., a savings and loan funding with a check drawn against a FDIC insured bank).

Second business day availability. If the deposit is made by checks other than those described in paragraphs 1 and 2 above, disbursement may occur on the day when funds must be made available to depositors under Federal Reserve Regulation CC. In most cases, these checks will be available on the second business day following deposit. (For further details, consult California Insurance Code Section 12413, et seq. and Regulation CC).

These are the minimum periods before funds will be made available. North American Title Company, Inc. **is** not obligated to disburse funds at the expiration of the time periods above, and expressly reserves the right to require additional time before disbursing on deposited funds. Close of escrow and final disbursement will not be made based on deposits in the form of personal checks, corporate checks, credit union checks, money market checks, travelers checks and official checks until confirmation of final clearance of the funds.

North American Title Company, Inc. will not be responsible for accruals of interest or other charges resulting from compliance with the disbursement restrictions imposed by state law.

North American Title Company, Inc. charges for recording the transaction documents include charges for services performed by North American Title Company, Inc., in addition to an estimate of payments to be made to governmental agencies.

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

C.      The map attached, if any, may or may not be a survey of the land depicted hereon. North American Title Company, Inc. expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

Referring Party:         Doma Insurance Agency, Inc., Doma Insurance Agency of Arizona, Inc., Doma Title of California, Inc., Doma Insurance Agency of Colorado, Inc., Doma Insurance Agency of Florida, Inc., Doma Insurance Agency of Illinois, Inc., Doma Insurance Agency of Indiana, LLC, Doma Insurance Agency of Minnesota, Inc., Doma Insurance Agency of Nevada, Inc., Doma Insurance Agency of New Jersey, Inc., Doma Insurance Agency, Inc., dba Doma Settlement Services, Inc., Doma Insurance Agency of New Jersey, Inc., dba Doma Abstract Agency, Doma Insurance Agency of Texas, Inc., Doma Insurance Agency of Utah, LLC ("Doma")

This is to give notice that Doma has a business relationship with North American Title Insurance Company ("NATIC"). Doma and NATIC, directly or indirectly, are wholly owned subsidiaries of States Title Holding, Inc. Because of this relationship, this referral of services may provide Doma a financial or other benefit.

Set forth below are the estimated charges or range of charges for the settlement services provided by NATIC. You are NOT required to use NATIC as a condition for closing your transaction.

THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

---

**Title Insurance Fees**

NAT provides closing services and title insurance through numerous title insurance underwriters, one of which is NATIC. If NATIC is selected as the title insurer, the following fees apply:

        10% - 40% of costs for lender's and/or owner's title insurance, as applicable, depending on the property state, and as shown on the Loan Estimate and/or Closing Disclosure provided by your lender.

Contact your local Doma representative for a more detailed title insurance quote based on your specific transaction.

---

ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that NAT is referring me/us to purchase the above-described settlement service and may receive a financial or other benefit as the result of this referral.

**Buyer/Borrower:**                            **Seller:**

_____

_____

_____

_____

Date: _____        Date: _____

**NORTH AMERICAN TITLE COMPANY, INC.**

330 Primrose Road, Suite 502, Burlingame, CA 94010
Office Phone:  650-696-1725  Office Fax:  650-319-8138  Email:  aross@nat.com

**Closing Protection Letters can be ordered directly by emailing cacpl@doma.com with your title order number and property address.**

Attention:

Your Ref:
Our Order No.:  55913-1617239

<u>**LENDERS SUPPLEMENTAL REPORT**</u>

Dated as of January 4, 2022 at 12:00 AM.

Title Officer: Juan Carlos Pena

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan form policy of Title Insurance:

Our ALTA Loan Policy, when issued, will contain Endorsement Nos. 100 and 116.

There is located on said land a Single Family
Known as:  39 Ethel Avenue, Mill Valley, CA 94941
City of Mill Valley
County of Marin
State of California.

According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows: None

# Privacy Notice

## The Doma Family of Companies

| FACTS | WHAT DOES THE DOMA FAMILY OF COMPANIES DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information.  Federal law gives consumers the right to limit some, but not all, sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>• Social Security number and income<br>• Transaction history and payment history<br>• Purchase history and account balances |
| How? | All financial companies need to share customers' personal information to run their everyday business.  In the section below, we list the reasons financial companies can share their customers' personal information, the reasons the Doma Family of Companies chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Doma share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**<br>Such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**<br>To offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**<br>Information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**<br>Information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call 1 (855) 306-0237 |
|---|---|

**Other important information**

*California Residents – Effective January 1, 2020, the California Consumer Privacy Act allows California residents, upon a verifiable consumer request, to request that a business that collects consumers' personal information give consumers access, in a portable and (if technically feasible) readily usable form, to the specific pieces and categories of personal information that the business has collected about the consumer, the categories of sources for that information, the business or commercial purposes for collecting the information, and the categories of third parties with which the information was shared. California residents also have the right to submit a request for deletion of information under certain circumstances. If a business does not produce the information or delete the consumer's personal information as requested, it must provide an explanation in terms of the exemptions and exceptions provided under the CCPA. To contact us with questions about our compliance with the CCPA, call 1 (650) 419-3827 or email info@doma.com.

## Who we are

| Who is providing this notice? | The Doma Family of Companies (identified below), which offers title insurance and settlement services. |
|---|---|

## What we do

| How does Doma protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secure files and buildings. |
|---|---|
| How does Doma collect my personal information? | We collect your personal information, for example, when you<br><br>• Apply for insurance;<br>• Apply for financing;<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your government-issued ID<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account – unless you tell us otherwise. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• Nonaffiliates we share with can include collection agencies, IT service providers, companies that perform marketing services on our behalf, and consumer reporting agencies. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• Doma doesn't jointly market. |

The Doma Family of Companies consists of the following entities:

| | |
|---|---|
| Doma Holdings, Inc. | Doma Insurance Agency of Texas, Inc. |
| States Title Holding, Inc. | Doma Insurance Agency of Utah, LLC |
| Doma Corporate, LLC | Doma Title Insurance, Inc. |
| Doma Home Insurance Services, LLC | Doma Trustee Services, LLC |
| Doma Insurance Agency, Inc. | Doma Insurance Agency of Arizona, Inc. |
| Doma Insurance Agency of Colorado, Inc. | Doma Title of California, Inc. |
| Doma Insurance Agency of Florida, Inc. | NASSA LLC |
| Doma Insurance Agency of Illinois, Inc. | North American Title Insurance Company |
| Doma Insurance Agency of Indiana, LLC | North American Asset Development, LLC |
| Doma Insurance Agency of Minnesota, Inc. | North American Services, LLC |

| | |
|---|---|
| Doma Title Agency of Nevada, Inc.<br>Doma Insurance Agency of New Jersey, Inc. | Spear Agency Acquisition Inc.<br>States Title, LLC<br>Title Agency Holdco, LLC |

## CLTA STANDARD COVERAGE POLICY - 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.     (a)     Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)     Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate
   or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:

a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
c. that result in no loss to You; or
d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b. in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
   The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

## [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records. ]

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

### 2006 ALTA OWNER'S POLICY (06-17-06)
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys', fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations.  This exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
1. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
2. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
3. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
4. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.
7. [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

Case: 22-03024   Doc# 1   Filed: 05/16/22   Entered: 05/16/22 17:58:45   Page 64 of 66

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.



POR. SAUCELITO RANCHO

Tax Rate Area
5-000

CITY OF MILL VALLEY
Assessor's Map Bk.28 -Pg.10
County of Marin, Calif.

NOTE—Assessor's Block Numbers Shown in Ellipses.
Assessor's Parcel Numbers Shown in Circles.

Tamalpais Land and Water Co. Map No. 5 R.M. Rack I - Pull 2

THIS MAP WAS PREPARED FOR ASSESSMENT PURPOSES ONLY. NO LIABILITY IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. ASSESSOR'S PARCELS MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.