Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>E. LYNN SCHOENMANN,<br><br>Debtor | Case No. 22-30028<br><br>Chapter 11 |
| E. LYNN SCHOENMANN<br><br>Plaintiff<br><br>vs.<br><br>STUART GORDON SCHOENMANN, CELESTE LYTLE; BETH SCHOENMANN; COLETTE SIMS<br><br>Defendant | Adv. Pro. No. 22-3024 DM<br><br>DATE: July 14, 2023<br>TIME: 10:30 a.m.<br>JUDGE: Honorable Dennis Montali |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

## I. SUMMARY

The Court should grant a Stay Pending Appeal, thereby preventing the distribution, disposition or dissipation of the portion of the proceeds of sale of the 39 Ethel Property determined to be due to the Executor (the "Executor's Proceeds") pending a final determination of the merits of the pending appeal of the Court's Decision, and hence the Executor's entitlement to the Executor's proceeds.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b). This Court exercises "core" jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (M), (N) and (O) and can enter a final judgment herein.

Venue is appropriate pursuant to U.S.C. § 1409(a).

Although the District Court has jurisdiction over the merits of the pending appeal, this Court retains the authority to rule on the instant application for a stay pending appeal.

## III. RELEVANT FACTS

Among the Debtor's principal assets is the single family home located at 39 Ethel, Mill Valley, CA. 94941 (the "39 Ethel Property") Through an Order entered on February 27, 2023; Dkt #252; the Court authorized the Debtor to employ Compass Realty to effect the sale of the 39 Ethel Property. After material marketing efforts, the Debtor has accepted an offer to purchase the 39 Ethel. Specifically, the Debtor proposes to sell the 39 Ethel Property to Kenneth D. and Christina Hurwitz (collectively, "Hurwitz") for $3.525 million (the "Proposed Sale"). Approval of the Sale and of Plaintiff's Motion to Sell Under Section 363(h) are set for hearing concurrently herewith.

The Debtor and her now-deceased husband, Donn Schoenmann ("Donn") originally took title to 39 Ethel Avenue as Joint Tenants with right of survivorship. The Debtor and Donn entered into a Post-Marital Agreement (the "PMA") which declared 39 Ethel Avenue to be held as community property with right of survivorship.

Following his appointment, the Executor, Defendant herein, commenced litigation in the Probate

Court seeking to void the PMA, with the effect that community property, including 39 Ethel Avenue, would be held as community property without right of survivorship, such that the probate estate would hold an undivided interest in such property.

On December 27, 2021, the probate court entered a Tentative Decision and Proposed Statement of Decision ("Tentative Decision") under California Rule of Court 3.1590. The probate court found that the PMA signed by Donn and Lynn Schoenmann on November 8, 2016 was the product of undue influence and as a result is invalid. The Tentative Decision never became a final Order.

After the Debtor commenced her Chapter 11 case on January 14, 2022, commenced an Adversary Proceeding No. 22-03024 against the Executor and others, seeking to quiet title in herself alone to, *inter alia*, 39 Ethel Avenue. Through a Memorandum Decision and Judgment; Dkt #21 and #22 in that Adversary Proceeding; the Court determined that the Tentative Decision was entitled to issue preclusive effect with respect to the PMA and community property (the "Decision").

The Debtor has appealed the Decision and now seeks a stay pending appeal. In the absence of a stay, upon determining the respective rights and entitlements of the parties to this Adversary Proceeding, the amounts determined to be due to the Executor (the "Executor's Proceeds") will be distributed to the Executor. Through this Application, Plaintiff seeks an Order restraining the distribution, disposition or dissipation of the Executor's Proceeds pending a determination of the merits of the Decision on appeal.

### III.    ARGUMENT

Rule 62, made applicable by Fed. R. Bankr. P. 7062, and Fed. R. Bankr. P. 8007, address stays pending appeal.

#### A.    *Legal Principles*

Rule 62(b) provides that "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."

The Court has "inherent discretionary authority" in setting a bond, "with the overarching purpose being to safeguard the judgment creditors as completely as possible without irreparably injuring the

judgment debtors." *Abbywho, Inc. v. Interscope Records*, No. CV 06-06724 MMM (JTLx), 2008 U.S. Dist. LEXIS 129650, at *9 (C.D. Cal. Aug. 25, 2008) (cleaned up).

This includes providing "an alternative form of security," such as placing proceeds from the sale of property into escrow. <u>*MDY Indus., LLC v. Blizzard Entm't, Inc.,* No. CV-06-2555-PHX-DGC, 2009 U.S. Dist. LEXIS 24151, at *15-16 (D. Ariz. Mar. 10, 2009)</u>.

Here, the Debtor requests that the Court freeze the Executor's share of the proceeds of sale pending appeal, either by placing into escrow (or depositing into the registry of the Court) any proceeds from the sale of any property affected by the Decision pending the outcome of the appeal. The Court has ample discretion to determine that the escrowed funds constitute a suitable bond pending appeal.

If the Court does not find that a suitable bond, that decision does not close the inquiry. Stays pending appeal, especially in bankruptcy cases, are often issued in favor of the representative of the bankruptcy estate without bond. Compare, Rule 8007(d).

Where a stay pending appeal is sought in the absence of a bond, the Court employs the tests ordinarily used in connection with a request for injunctive relief. Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC), 465 B.R. 18, 28 (D. Del. 2011) ("The test for determining whether to grant a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005 mirrors ... the standard for preliminary injunctions pursuant to Federal Rule of Civil Procedure 65(a).")

> In considering whether to grant a stay pending appeal, courts consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest.

*In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). These are the traditional standards for injunctive relief and are met here.[1]

The Ninth Circuit has held that courts should engage in a "general balancing approach" of the foregoing factors when considering a motion to stay. *Leiva-Perez v. Holder,* 640 F.3d 962, 965-66 (9th Cir. 2011). This standard requires that the movant demonstrate "either a probability of success on the

---

[1] The subsequent discussion up to page 11 is taken from Dkt #12-2 previously filed in Adv Pro. 23-3017.

merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor." *Id*. at 964 (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998); *Stuhlbarg Intl. Sales. Co., Inc. v. John D. Brush & CO., Inc.*, 240 F.3d 832, 839-840 (9th Cir. 2001); *Dumas v. Gommerman*, 865 F.2d 1093, 1095 (9th Cir. 1989). These two "tests" are not separate but rather represent "a continuum of equitable discretion whereby the greater the relative hardship to the moving party, the less probability of success must be shown." *Regents of Univ. of Calif. v. ABC, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984).

Injunctions can also be issued to protect assets to which there are conflicting claims and liens. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 729-30 (9th Cir. 1999) (preventing liquidation and distribution of corporate assets); *Reebok Int'l, Ltd. v. Maunatech Enterprises, Inc.*, 970 F.2d 552, 560-561 (9th Cir. 1992). Finally, requests for injunctive relief which serve to preserve the *status quo* are looked upon more favorably than those which seek to alter the *status quo*. *See*, e.g., *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

### B. *Likelihood of Success*

This Court issued the Decision, and so it is unreasonable to expect this Court promptly to conclude that the Decision was erroneous and is likely to be overturned on appeal. It is nonetheless reasonable and appropriate for the Court to acknowledge that serious questions are raised on appeal which, coupled with irreparable harm, warrant a stay under applicable Ninth Circuit Law. That is the intended thrust of the following presentation,

1. <u>The Issue on Appeal</u>

The Court is thoroughly familiar with this case. The issue on appeal is whether the Probate Court's December 27, 2021 "Tentative Decision and Proposed Statement of Decision on Petitioner's Motion to Invalidate the Post Marital Agreement between Donn and the Debtor" (the "Tentative Decision") collaterally estops the Debtor from asserting that (a) what the parties and the Court have

come to refer as the November and July deeds are valid, and (b) Donn's March will and related documents, including the March deeds, are invalid. For purposes of this stay motion, the Debtor will address only the July deeds: if the July deeds are valid, the Debtor does not need to address the validity of the other documents.

As demonstrated below, even if the Court declines to find that the Debtor is likely to succeed on the merits of her appeal, it should at least conclude that she has presented serious legal questions; under the circumstances, the minimum relevant standard.

2. Relevant California Law.

In California, "collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court,* 51 Cal. 3d 335, 341 (1990). California courts will apply collateral estoppel only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. *See* 51 Cal. 3d at 342-43.

There are five threshold requirements: First, the issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding. Second, this issue must have been *actually litigated* in the former proceeding. Third, it must have been *necessarily decided* in the former proceeding. Fourth, the decision in the former proceeding must be *final and on the merits*. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Id*. at 341. "The party asserting collateral estoppel bears the burden of establishing [all of] these requirements." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

3. Four of the Requirements for Issue Preclusion Cannot Be Met

The requirements are not disjunctive; all five must be met. None of the first four can be met.

### First: The validity of the July deeds was not litigated in the probate court bifurcated trial, so it cannot be "identical."

As a result of a stipulation by the parties in the probate court, a bifurcated trial was held limited to one issue, and only one issue: whether or not the parties' Post Marital Agreement ("PMA") was valid. By stipulation, therefore, the probate trial did not involve the validity of the July deeds, nor did the Tentative Decision address the issue of the July deeds validity. It did not find them to be invalid.

### Second: The validity of the July deeds was not actually litigated in the probate court bifurcated trial.

"[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." *In re Marriage of Brubaker & Strum,* 73 Cal. App. 5th 525, 537 (2021) (cleaned up).

The Executor can point to no pleading or other paper in the probate court bifurcated trial where the issue of the validity of the July deeds was "properly raised, submitted for determination, and determined in that proceeding." *Id.*

As in the *Brubaker* case, while the evidence surrounding the execution of the deeds might have been "relevant" to the issue of the PMA's validity, "such evidence was not required" to find that it was invalid. "Those issues were very different." *Id.* at 539

As in *In re Harmon,* 250 F.3d at 1248, "[b]ecause there was no express finding in respect to [that issue] (or anything else for that matter), we cannot conclude that the state court considered and decided the issue. Under *Williams' Estate*, then, we cannot conclude that the issue was actually litigated."

There is no evidence that the *validity* of the July deeds was *actually litigated*. The focus of the bifurcated trial was on whether the PMA was "fair," or "unfairly favored" the Debtor over Donn, and,

relatedly, whether Donn Schoenmann was under the Debtor's "influence" and therefore did not enter into the PMA "voluntarily."

The Executor cannot point to any pleading, evidence or *actual finding* as to the validity of the July deeds.

### Third: The "issue" of the validity of the July deeds was not "necessarily decided."

As demonstrated above, the bifurcated trial was intended to address only the validity of the PMA. That was the "issue," and not events that preceded it by over four months. Post-*Lucido* decisions have stressed the importance of the definition of an "issue" for issue-preclusion purposes. *Key v. Tyler,* 34 Cal. App. 5th 505, 534 (2019).

The Executor's pretrial "Issue Conference Statement" made only one passing reference to the July deeds. It did not assert that the July deeds were invalid, that their execution was a component of any "unfairness" on the Debtor's part, or that their validity was an "issue" to be tried in the bifurcated trial. The PMA does not mention, or address, the July deeds. The Tentative Decision's discussion of the signing of the July deeds was "entirely unnecessary" to its invalidation of the PMA.

Under a long line of California cases, the validity of a testamentary document such as the PMA has to be tested by the events immediately surrounding its execution. Duress or undue influence can negate a testamentary document like the PMA only where it is present at "the very time the document" is signed.

> The unbroken rule in this state is that the courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of 'a pressure which overpowered the mind and bore down the volition of the testator *at the very time the will was made.*'

*In re Welch's Estate,* 43 Cal.2d 173, 175–176 (1954) (citations omitted; emphasis added).

The *issue* of the validity of the July deeds was not "necessarily decided" by the Tentative Decision, at least in part because that *issue* was *never* addressed or determined within the Tentative Decision's four corners. *Lucido v. Superior Court*, 51 Cal. 3d at 342.

> **Fourth: The decision in the former proceeding was not final and on the merits as to the validity of the July Deeds.**

It was broadly acknowledged that the Tentative Decision itself was not a final decision. The Debtor, however, agreed that she was "accepting the results of the Tentative Decision [as final] for the present purposes of prosecuting this bankruptcy case." Busch Decl. Ex H at 3:1-2 (cited in the Executor's memorandum, ECF Doc. #9, at 12:28-13:1).

The Executor also cited to the Debtor's having "agreed to be bound by the factual findings that meet [the necessity] standard" for issue preclusion." Busch Decl. Ex I at 17:14-22 (ECF Doc. #9 at 13:4-12). The Court expressed it more precisely at a July 29, 2022 hearing, "for example, I don't think the Debtor's counsel could revisit the invalidity of the PMA, but she could certainly revisit things that were not necessary to the judge's decision. The word 'necessary" is a very carefully worded phrase that means necessary to the outcome, not necessary to the judge addressing the facts." Sullivan Decl. Ex. C at 16:23-17:4.

While the Debtor agreed that the result of the Tentative Decision – invalidation of the PMA – would be treated as a final decision, that says nothing about the July deeds executed four months before the PMA. Even if every other element of the Tentative Decision gave rise to issue preclusion with respect to the validity of the July deeds – and, as noted above, *none* of those elements were met – the Tentative Decision standing alone is not a final judgment on the merits, and the Debtor's stipulation about the result of avoiding the PMA does not render the Tentative Decision a final judgment on the merits with respect to the July deeds.

4. Applying Collateral Estoppel Would Be Unfair

It is well established that:

> Even if the minimal requirements for application of collateral estoppel are satisfied, courts will not apply the doctrine if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case, or if the party to be estopped had no full and fair opportunity to litigate the issue in the prior proceeding.

*Zevnik v. Superior Court*, 159 Cal. App. 4th 76, 82-83 (2008) (cleaned up).

The bifurcated probate proceeding was supposed to be limited to one, and only one, issue: was the PMA valid? That should have required looking only at Donn Schoenmann's state of mind, and the state of facts, on November 8, 2016, when he signed it after consulting with his lawyer, Cheryl Sena, who wrote it. *See In re Welch's Estate,* 43 Cal.2d 173, 175–176 (1954), discussed above.

Instead, the probate court allowed the Executor to roam far back into the ancient history of Donn's and Lynn's marriage, and events occurring months and years before they signed the PMA. The result was that the Debtor was blindsided with a barrage of irrelevant, largely hearsay, material that had nothing to do with the fairness of the agreement and Donn's state of mind and capacity at the time he and Lynn signed it. That was manifestly unfair, and denied the Debtor a full and fair opportunity to litigate the issues she is now being bound to, like the validity of the July deeds.

This issue, not addressed in the Court's Decision, also forms at least a serious issue on appeal.

C. **Irreparable Harm**

The Executor operates, for present purposes, solely in a representative capacity, and if the probate estate he represents is unable to respond to a demand or a judgment, the creditor has no other source of recovery.

Every indication is that the probate estate is administratively insolvent. The Proof of Claim the Executor previously filed indicated that professional fees for which the probate estate was presumably liable and for which he sought indemnity from this bankruptcy estate exceeded $3.7 million. Dkt #260,

p.2. The probate estate's only asset recovery of which the Debtor is aware is a San Francisco townhouse which yielded a fraction of that amount.

The Debtor reasonably fears, therefore, that if the Executor's portion of the proceeds of sale are released to him, they will be promptly dissipated, possibly in satisfaction of administrative claims. If the Debtor thereafter prevails on appeal, sets aside the Decision, and demands a refund of the Executor's portion of the proceeds of sale, the claim may prove uncollectible.

Notably, the Executor's Opposition; Dkt #15, Adv. Pro. 23-3017; entirely failed to respond to the inference that the probate estate is administratively insolvent.

The Debtor believes that this constitutes irreparable harm, in the absence of a stay pending appeal.

### D. Balancing of Hardship

The District Court ordinarily resolves appeals promptly, and generally within a year. The hardship to the probate estate is waiting perhaps a year for its recovery from the 39 Ethel Property, if it prevails. The hardship to the estate is the potential loss of perhaps a million dollars of proceeds of sale, even if it prevails on appeal and establishes its right to those funds. It is submitted that the balance of hardships tilts heavily in favor of the bankruptcy estate.

### E. Public Policy

The public has no material interest in this issue.

## IV. THE OPPOSITION

### A. The Procedural Objections Are Moot

The Defendant raised various procedural objections, principal of which related to the Adversary Proceeding in with the Application was brought. Those objections have been resolved by the instant Motion.

### B. Section 363(j) Does Not Override Injunctive Relief

The Executor argues that Section 363(j) overrides the Court's power to grant injunctive relief in the form of a stay pending appeal under either Rule 62 or 65. Unsurprisingly, no authority for this proposition is presented, merely a string of quotations from substantively irrelevant cases. In her accompanying Reply Brief in support of the Motions under Section 363(h) and (j), the Debtor demonstrates that Section 363(j) and the availability of injunctive relief are two entirely separate and independent issues.

### C. There is No Contravention of the Settlement Term Sheet

Defendant complains that a stay would contravene the Settlement Term Sheet; Dkt. # 278. .See, Opposition 10:9-17, Dkt #15, Adv. Pro. 23-3017. Obviously, the language of the Settlement Term Sheet does not support the contention. The appeal was pending at the time the Settlement Term Sheet was negotiated, and the Settlement Term Sheet said nothing about waiving either the appeal or the right to seek a stay pending appeal.

Demonstrating the futility of negotiating settlements with the Executor, he argues that "If for any reason the Court grants the Application [for a stay], the Court should hold in abeyance the dismissal of that [dischargeability] proceeding until such time as it [sic] receives all its [sic] funds from this sale [of 39 Ethel]." Opposition 10:15-17, Dkt #15, Adv. Pro. 23-3017. In fact, the relevant portion of the Settlement Term Sheet, ¶12; attached to the Court's Conversion Order; Dkt #278; provides only:

> Upon the conversion of Debtor's case to a case under Chapter 7, payoff of the [Bridge] Lender without resort to assets of bankruptcy estate, and sale of 39 Ethel, the [dischargeability] Adversary Proceeding shall be dismissed with prejudice.

There is no suggestion that the dismissal of the dischargeability action is conditioned on the presence or absence of a stay pending appeal or the distribution of funds to the Executor.

WHEREFORE, Plaintiff prays for relief as follows:

1. That the Court make and enter a stay pending appeal barring distribution, disposition or dissipation of the Executor's Proceeds until a final order is entered with respect to the Decision; and

2. Granting such other and further relief as may be just and proper.

Respectfully submitted,

DATED: July 7, 2023    ST. JAMES LAW, P.C.

By: /s/ *Michael St James* .
Michael St. James
Counsel for the Plaintiff