LAW OFFICES OF MIRIAM HISER
MIRIAM HISER (129824)
550 Montgomery Street, Suite 650
San Francisco, California 94111
Telephone: (415) 345-9234
Facsimile: (415) 395-9372
mhiser@hiserlaw.com

Attorney for Defendant Stuart Schoenmann,
Executor of the Probate Estate of Donn R.
Schoenmann

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>E. LYNN SCHOENMANN,<br><br>    Debtor. | Case No. 22-30028 (DM)<br><br>Chapter 11<br><br>Adversary Proceeding No. 22-03024 |
| E. LYNN SCHOENMANN,<br><br>    Plaintiff,<br><br>    v.<br><br>STUART SCHOENMANN, as Executor of the Probate Estate of Donn Schoenmann,<br><br>    Defendant. | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL**<br><br>Date:   August 11, 2023<br>Time:  10:30 a.m.<br>Judge: Hon. Dennis Montali |

Stuart Schoenmann, Executor of the Probate Estate of Donn R. Schoenman and Defendant herein ("Defendant") submits the following Memorandum of Points and Authorities in Opposition to Debtor's Motion for Stay Pending Appeal:

### INTRODUCTION

Debtor comes to this Court once again asking for relief that is not supported by the statute she cites. This Court has just enforced the judgment that Debtor wants "stayed," and it did so at Debtor's own request. Neither Rule 8007 nor any of the cases Debtor cites provide authority for staying a judgment that has just been enforced at the moving party's request.

"Staying" the judgment would also stay *any* further administration of Debtor's bankruptcy estate. The judgment must remain *enforceable* in order for the Chapter 7 Trustee to sell the Scottsdale and Idyllwild properties, which are also co-owned by the Probate Estate and debtor. A stay will tie the Trustee's hands until Debtor's appeal is concluded, presumably through at least the Ninth Circuit. Rule 8007 does not allow a judgment to be first enforced (via 363(h) sale), stayed (as to distribution of proceeds to the co-owner), then "unstayed" and enforced to allow further sales of co-owned property.

Section 363(j) of the Bankruptcy Code and Ninth Circuit law mandate immediate distribution of the net proceeds of sale to a co-owner after sale of co-owned property authorized under Section 363(h). Immediate distribution is also required to make 363(h) constitutional. If the Court does grant the stay, it must require Debtor to provide a supersedeas bond in the amount of 1.25 to 1.5 times the judgment being appealed to protect the Probate Estate from the significant financial loss it will incur by loss of access to its money for several years.

## ARGUMENT

**1. Rule 8007 does not permit a Court to stay distribution of proceeds of co-owned properties that have been sold pursuant to 363(h).**

On Debtor's own Motion, this Court approved the sale of the Property pursuant to 11 U.S.C. Section 363(h), which governs sale of co-owned property. The Order confirmed that the Probate Estate was "the fifty percent co-owner." The Probate Estate must now receive its one half of the "proceeds of …sale…less the costs and expenses…of such sale." 11 U.S.C. § 363(j).

The statute mandates that the [court] "*shall distribute*" these proceeds to the co-owner. *Stine v. Diamond (In re Flynn),* 418 F.3d 1005 (9th Cir. 2005); 3 Collier on Bankruptcy P. 363.08. *See also In re Marino,* 794 F. 2d 1367, 1369 (9th Cir. 1986) ("Subsection (j) directs the trustee to distribute the net proceeds of a sale made pursuant to subsections (g) and (h) to the property's co-owners, after the payment of costs and expenses, according to the interests of all the co-owners."). As the Court in *Aino v. Maruko*, 200 B.R. 876, 883 (Bankr. S.D. Cal. 1996), held:

> … the statute is phrased in mandatory terms. It mandates that after the sale, the trustee must distribute the proceeds to the co-owners and the estate. The trustee is

provided with a point in time and **directed to distribute to all co-owners simultaneously.** The plain language does not support Maruko's position that the debtor can distribute its own share and withhold the co-owners' share for several years.

*Aino,* 200 B.R. at 882 (emphasis added).

As this Court has repeatedly stated, the "state of play" in this Adversary Proceeding is that 39 Ethel is co-owned. Debtor filed a Motion to Sell Under 363(h). The Court granted that motion, and the Probate Estate's interest as fifty percent co-owner has been determined. This determination distinguishes *In re Ball*, 362 B.R. 711, 720 (Bankr. N.D. W. Va. 2007), relied on by Debtor for the proposition that the Court can stay distribution of sale proceeds to the Probate Estate. In *Ball*, preferential transfer and/or fraudulent transfer claims against a co-owner had yet to be determined by the bankruptcy court itself, and that Court allowed a brief escrow of funds owed pending *briefing* on a preliminary injunction set less than three months out. As the Court stated, "neither Flynn nor Maruko should be read to mean that the Trustee must immediately pay a co-owner a portion of sale proceeds *when the extent of the co-owner's interest in the property is undetermined.*" *In re Ball*, 362 B.R. at 720 (emphasis added). The decision does not state whether the preliminary injunction was actually granted; it simply states that a hearing on the injunction was scheduled. There are no other known reported cases where a stay of distribution of proceeds has been allowed after a 363(h) sale.

Immediate distribution of the Probate Estate's proceeds to it is also required to make 363(h) constitutional. *Aino*, 200 B.R. at 883. As the Court stated: "…in reviewing the reported cases, the statute, the legislative history and various treatises, the court concludes that the drafters of the Bankruptcy Code intended the distribution under section 363(j) to be immediate." *Aino*, 200 B.R. at 882. If the Probate Estate does not receive its one-half of the net proceeds of 39 Ethel, it will have been deprived of property without compensation, in violation of the Takings Clause of the Constitution.

2. **Debtor misstates her burden of proof.**[1]

Debtor cites *Abassi v. INS*, 143 F. 3d 513, 514 (9th Cir. 1998), cited by *Leiva-Perez v. Holder*, 640 F.3d, 962 (9th Cir. 2011) for the proposition that a stay motion requires her to prove

---

[1] As Debtor has done, the Probate Estate repeats its discussion from its prior filing from this point to page 8.

"either a probability of success on the merits and the *possibility* of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor." [p. 4, emphasis added]. This is not correct. *Abassi* has been disapproved on the grounds that a mere "possibility" of irreparable injury is "too lenient." *Nken v. Holder*, 556 U.S. 418, 434-435 (2009). As the Supreme Court held in *Winter v. NRDC, Inc.*, 555 U.S. 7, 20-21 (2008), "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* Debtor's own authority, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), holds that debtor must address the following: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Debtor also argues that the presence of a "serious question" on appeal and "irreparable harm" warrant a stay nonetheless (p. 5) and that she has "presented serious legal questions; under the circumstances, the minimum relevant standard." [p. 5].

This is also incorrect. As the Ninth Circuit held in *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1132 (9th Cir. 2011), the Petitioner must also show that the "balance of equities tips in his favor and that an injunction is in the public interest." In *Alliance*, the Ninth Circuit held that:

> the "serious questions" approach survives *Winter* when applied as part of the four-element *Winter* test. In other words, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, *assuming the other two elements of the Winter test are also met*.

*Alliance*, 632 F. 3d 1127, 1132 (emphasis added).

3. **Debtor admits that she cannot prove likelihood of success on the merits.**

Debtor admits that this Court is "unlikely to conclude that the [Quiet Title] Judgment was erroneous and is likely to be overturned on appeal." The arguments Debtor makes in this motion are no more than a rehash of what Debtor argued in the summary judgment motion, which

arguments Debtor has already lost.[2] The applicable test for issue preclusion is as follows.

> Issue preclusion bars the relitigation of *facts* based upon a five-part test: First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990). While Debtor argued that she was only bound by the ultimate findings made by the Probate Court, not by the numerous factual findings the Probate Court made in support of its ultimate conclusions, California law makes no such distinction. *Key v. Tyler*, 34 Cal. App. 5th 505, 536 (2019) ("we consider the collateral estoppel effect of the probate court's order . . . by identifying express findings in the Statement of Decision concerning issues that were actually litigated and that support the decision. In doing so, we do not attempt to distinguish between evidentiary and 'ultimate' facts.")." In the summary judgment motion, Debtor did not challenge the "finality" and "privity" issues, conceding they were met. She obviously cannot reargue them now.

    i.    <u>The Tentative Decision made numerous factual findings which when given preclusive effect demonstrate that there is no triable issue of material fact as to the validity of the July deeds.</u> It is true that the Tentative Decision did not enter an express finding the July Deeds were invalid. Instead, it made **numerous** factual findings which, when given preclusive effect, demonstrate there is no triable issue of fact as to the validity of the July Deeds.[3] Those facts are identical in the two cases, regardless of whether the ultimate issue is different because the entire gravamen of the summary judgment motion was that the verbatim factual findings from the Probate Court established all the requisite elements to defeat Debtor's quiet title claim. Debtor's argument asks the Court to ignore all this—just as she did in the summary judgment motion—and identifies no fact from which a factfinder could conclude otherwise (let alone any such fact in the record on the Motion for Summary Judgment, which is what would be required on appeal).

---

[2] Much of the following is from Defendant's Reply in support of their Motion for Summary Judgment.

[3] Debtor obtained the July deeds directly from Donn when he was—in her own words—"emaciated beyond the worst of concentration camp survivors" and "skin hanging on bones, tired, weak, such a sorry sight." She obtained most of them the same day Donn was hospitalized with an opiate overdose. As the Probate Court found, the July deeds were "executed in secret and at a time when Donn was alone, had just been released from the hospital and was described as disoriented." *See Defendant's Motion for Summary Judgment*: 8:16:-25, DKT 9, Adv. Proc. 22-03024.

ii. <u>As this Court already found, the evidentiary facts demonstrating that the July deeds were invalid were actually litigated in the probate court as that term is applied for collateral estoppel effect.</u> "Actually litigated" in fact means every issue properly raised by the pleadings, submitted for determination, and determined. *People v. Sims*, 32 Cal. 3d 468, 484 (1982) (noting that a "failure to present evidence" does not preclude a finding of actual litigation). The validity of the July deeds was properly raised by the pleadings. The First Amended Petition ["FAP"] in the Probate Court alleged that Donn executed and recorded the March Deeds to "carry out his wishes following his death," by severing Debtor's survivorship rights. FAP ¶¶ 128-130. Defendants further alleged that "[t]he deeds of the Idyllwild Home, Idyllwild Lot, . . . 39 Ethel Avenue, and Scottsdale Condo reinstating the rights of survivorship for the benefit of Lynn are invalid because the deeds were the product of undue influence on the part of Lynn and obtained in breach of her fiduciary duty to Donn." FAP ¶ 342. The facts found in the Tentative Decision were submitted for determination, and determined, as each relates directly to the undue influence inquiry this Court resolved. *See Defendant's Motion for Summary Judgment,* II(B)(2), p. 10-12. Indeed, Debtor does not argue otherwise, instead claiming only that "[t]here is no evidence that the *validity* of the July deeds was *actually litigated*." But that is not the relevant inquiry, and not what Defendants argued in the Summary Judgment motion. What Defendants argued in the motion was that the *facts* supporting the July deeds' invalidity were actually litigated, and they leave no remaining dispute.

iii. <u>The issue of the validity of the July deeds was "necessarily decided.</u> "Necessarily decided" encompasses all facts found by the Court that are not "entirely unnecessary" to the judgment in the initial proceeding. *Lucido,* 51 Cal. 3d at 342. Moreover, regardless of whether the ultimate question is whether Donn was unduly influenced in November, the Court was required to consider "the totality of the facts and circumstances," not simply whether "each incident by itself supports a finding of undue influence." *Gomez v. Smith*, 54 Cal. App. 5th 1016, 1033 (2020). As the probate court properly found, Debtor's actions and tactics in July bear on whether she exerted/continued to exert undue influence on Donn in November, and are thus decidedly not "entirely unnecessary" to her finding that Lynn did precisely that.

iv. <u>There is no dispute that the Tentative Decision is not a final judgment but Debtor</u>

<u>stipulated that it be treated as such</u>. Indeed, when Debtor declared bankruptcy, Creditors sought to lift the stay so a final judgment could be obtained. To stay in bankruptcy court, Debtor instead agreed to treat it as final. Her statements agreeing to do so are presented in II(B)(3) of the summary judgment motion and are bolstered by a subsequent stipulation filed in Adversary Proceeding 22-03019 after Defendants file the summary judgment motion. Having lost the MSJ, Lynn cannot retract her agreement to be bound by the Tentative Decision now.

   v. <u>Debtor was not "blindsided" by the presentation of evidence.</u> Undue influence is a wide-ranging analysis by its nature, and not at all cabined to the facts of a specific day. Neither party was denied an opportunity to address all of the necessary issues. Both addressed them in their Issue Conference Statements before trial. Both addressed them in their opening statements at trial. Both addressed them again in their closing statements. Debtor's argument that the evidence presented was "largely hearsay" is quizzical: she made no objections to its admission at trial and it is well too late to do so now. The evidence in the record on appeal is not subject to any claims that it was entered in error.

   vi. <u>Debtor raises no "serious questions going to the merits" of her claims.</u> Debtor must raise questions "going to *merits* so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Washington Capitals Basketball Club, Inc. v. Barry,* 304 F.Supp. 1193 (N.D. Cal. 1969), *aff'd* 419 F 2d 472, 1969 U.S. App. LEXIS 9893 (9th Cir. 1969).[4] In addressing the "serious legal question," the Ninth Circuit held that "regardless of how one expresses the requirement, the idea is that to justify a stay, a petitioner must show that, at a minimum, she has a substantial case for relief on the *merits*." *Leiva-Perez,* 640 F3d. at 968.

  **4.** **Debtor cannot prove irreparable harm.**

  Regardless of the showing on the other elements, a petitioner who does not show that irreparable injury is probable if the stay is not granted cannot be granted relief. *Leiva-Perez,* 640 F. 3d at 964. Ordinarily, economic injury is not irreparable because monetary damages are an adequate remedy. *Rent—A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

---

[4] The "serious questions" presented in *Leiva-Perez* and *Abbassi*, were whether petitioners should be deported to countries from which they sought asylum.

597, 603 (9th Cir. 1991). Harm that is "merely speculative" will not support injunctive relief, "*Pom Wonderful LLC v. Pur Bevs. LLC,* 2015 U.S. Dist. LEXIS 176834, *9 (C.D. Cal. 2015).

Debtor's claim of irreparable harm is the precise "merely speculative" claim that does not support injunctive relief. She "believes" that the Probate Estate is administratively insolvent; "reasonably fears" that if the Probate Estate receives its share of the proceeds it will "dissipate" them "possibly in satisfaction of administrative claims," and that if she prevails on appeal her claim "may" prove uncollectible. Beliefs and fears about what may happen if unsupported theories might be true do not constitute irreparable harm. As the Probate Estate noted in its initial response, administration of the Probate Estate has been stayed since Debtor filed her bankruptcy early last year.

**5. Depriving the Probate Estate of the use of its money for several years would inflict significant financial harm on the Probate Estate.** The "balance of equities" favors the Probate Estate. Interest alone on one million dollars would be $50,000 for one year. Depriving the Probate Estate of the right to invest these monies and to hold them in a fully insured account would put the Probate Estate at great financial risk. Debtor has not stated that she will give up her right to appeal to the Ninth Circuit if she loses, and that second appeal will undoubtedly take several more years. Debtor's appeal has also just been reassigned to a new District Court judge.[5] The Reasssignment Order vacates all hearing dates and motion deadlines. While it does not specifically address scheduling on appeals to the District Court, it is likely that this reassignment will delay a decision from the District Court.

**6. The Court must condition any stay on provision of a bond**.

If the Court does grant a stay, it must condition that stay on Debtor's provision of a supersedeas bond in an amount sufficient to protect the Probate Estate's interest. Traditionally, courts require a supersedeas bond in the amount of 1.25 to 1.5 times the judgment. *Cotton v. City of Eureka,* 860 F. Supp. 2d 999, 1029 (N.D. Cal. 2012). The Probate Estate's net share of proceeds is estimated to be $1,066,115.94. Any bond must thus be in the amount of at least $1,333,644. Debtor suggests as an alternative that the Probate Estate's proceeds itself could be

---

[5] The Probate Estate requests that the Court take judicial notice of the Order of Reassignment, a true and correct

considered that bond, citing *MDY Indus. LLC v. Blizzard, Inc.,* 2009 U.S. Dist. LEXIS 24151 (D. Ariz. March 10, 2009). It defies logic to argue that the Probate Estate's interest would be protected from financial loss by using its own rightful proceeds as a "bond." Moreover, in *MDS Indus.*, the court escrowed *all* sale proceeds, not just those of one owner. Here, following *MDS Indus.* would require the Court to impound all sale proceeds, including those to be paid either to the Bridge Lender or to the bankruptcy estate, not just those owed to the Probate Estate.

## CONCLUSION

The Probate Estate's net proceeds from the sale of 39 Ethel must be immediately distributed to it. No other result is supported by the statutes and case law.

Dated: August 4, 2023.　　　　　　　　LAW OFFICES OF MIRIAM HISER


By:　/s/ Miriam Hiser

　　　Miriam Hiser
Attorney for Defendant Stuart Schoenmann
Executor of the Probate Estate of Donn R. Schoenmann

copy of which is attached hereto as Exhibit A.